## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**JAMI CLAIRE and KATHRYN LANE,**

      **Plaintiffs,**

**v.**                            **CASE NO.: 4:20-cv-00020-MW-CAS**

**FLORIDA DEPARTMENT OF
MANAGEMENT SERVICES; JONATHAN
SATTER, in his official capacity as
Secretary of the Florida Department of
Management Services; UNIVERSITY OF
FLORIDA BOARD OF TRUSTEES;
MORTEZA HOSSEINI, in his official
Capacity as Chair of the University of
Florida Board of Trustees; THOMAS
KUNTZ, DAVID BRANDON, JAMES
HEAVENER, LEONARD JOHNSON,
MICHAEL MURPHY, DANIEL O'KEEFE,
RAHUL PATEL, MARSHA POWERS,
JASON ROSENBERG, ROBERT STERN,
RAY THOMAS, and ANITA ZUCKER, in
their official capacities as Members of the
University of Florida Board of Trustees;
and ANDY THOMAS, in his official capacity
as Public Defender of the Second Judicial
Circuit of Florida,**

      **Defendants.**

_____/

## DEFENDANT UNIVERSITY OF FLORIDA BOARD OF TRUSTEES AND
## UNIVERSITY OF FLORIDA BOARD OF TRUSTEES MEMBERS'
## MOTION TO DIMISS PLAINTIFF'S COMPLAINT

Defendants, University of Florida Board of Trustees ("UF") and Members of the University of Florida Board of Trustees, in their official capacities ("UF Board Members"), (collectively "UF Defendants") through undersigned counsel, and pursuant to Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P., and N.D. Fla. Loc. R. 7.1, moves this Court to dismiss Counts II, and V of the Complaint, with prejudice.

### *Introduction*

The Complaint must be dismissed based on several fundamental grounds. Plaintiff Jami Claire ("Plaintiff" or "Ms. Claire") brings the following counts against the UF Defendants: Count II asserts violations of Title VII against UF; and Count V, brought pursuant to 42 U.S.C. §1983, asserts violations of the Fourteenth Amendment's Equal Protection Clause against the UF Board Members.

Each of these counts must be dismissed, with prejudice, because Plaintiff has failed to demonstrate standing. None of the alleged injuries are fairly traceable to, or can be redressed by, the UF Defendants. This is because by statute, the Florida Department of Management Services ("DMS") has total control and authority over the provision of health insurance for state employees, including the Plaintiff. As such, the actions of the UF Defendants are not fairly traceable to the harm suffered by the Plaintiff, which was solely caused by the actions of the State in determining the appropriate level of healthcare for its employees.

Count V, styled as an *Ex Parte Young* claim for prospective injunctive relief from a continuing violation of law against state officers, also fails because it is barred by sovereign immunity. The relief sought is essentially retrospective and not prospective, and the UF Board Members lack the authority to implement the complained-of plan at issue. Both are factors that destroy the legal fiction that *Ex Parte Young* provides in very limited cases for litigants to obtain relief from states officials in federal courts in situations where such actions for relief would otherwise be barred.

## *Facts*

The following facts are taken from the Complaint and in the light most favorable to the Plaintiff, Jami Claire. None of the facts recited herein should be deemed an admission on the part of the moving parties that they are true. That said, the facts as set forth herein and in the complaint, simply do not provide a basis for relief against the UF Defendants.

Plaintiff, Ms. Claire was born male, but identifies as female. (Doc. 1 p. 8 ¶ 20, p. 18 ¶ 63). Plaintiff was diagnosed with gender dysphoria at or before the alleged constitutional and statutory violations occurred. (Doc. 1, p.18 ¶ 66). According to the Complaint, gender dysphoria is a medical diagnosis for the "feeling of incongruence between one's gender identity and one's sex assigned and birth, and the resulting distress caused by that incongruence. . .." (Doc. 1 p. 8 ¶ 22). Plaintiff

alleges that her treating physician recommended she receive an orchiectomy and deemed it medically necessary to treat her gender dysphoria. (Doc. 1 p. 24 ¶ 89, 90).

Plaintiff Claire is employed as a Senior Biological Scientist in the College of Veterinary Medicine at the University of Florida. (Doc. 1 p. 17 ¶ 60). As a state employee, her health insurance is provided by the state of Florida through AvMed. (Doc. 1, pp. 12-13 ¶¶ 36, 40, 41).

The state health plan is developed, maintained, and provided by DMS. (Doc. 1 pp. 12-13 ¶¶ 37, 38, 39). Under section VI of the health insurance plan documents outlining the coverage provided by AvMed there is a "Limitations and Exclusion" provision, which states "[t]he following services and supplies are excluded from coverage under this Plan unless a specific exception is noted. Exceptions may be subject to certain coverage Limitations." (Doc. 20-1 p. 57). Section VI then goes on to identify 39 different categories of limitations and exclusion in the plans, one of which is "gender reassignment or modification services supplies." (Doc. 20-1 p. 57).

While the Complaint does not include the AvMed document, it is referred to extensively therein. The Eleventh Circuit has instructed that a district court may consider extrinsic evidence in ruling on a motion to dismiss if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged. *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010)); *see also Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1267-68 (11th Cir. 2002). Plaintiff's

Complaint is centered around the state-provided insurance plan and the gender reassignment exclusion is also referred to repeatedly. (Doc. 1 p. 15 ¶ 50). Obviously, the plan document is central to the complaint and their authenticity should not be in question.

Plaintiff alleges that she sought authorization for an orchiectomy through the state health plan on December 27, 2018. (Doc. 1 p. 25 ¶ 92). AvMed issued a letter to Claire denying authorization for the procedure because, according to AvMed, it fell under the gender reassignment or modification services or supplies coverage exclusion. (Doc 1 p. 25 ¶ 93). Plaintiff appealed the denial to AvMed pursuant to the plan and AvMed denied the appeal. (Doc. 1 p. 25 ¶ 94). Plaintiff then filed a second–level appeal to the Division of State Group Insurance which also denied the appeal for the same basis as AvMed's denial. (Doc. 1 p. 25 ¶ 96, 97).

It is these denials upon which Plaintiff premises her Complaint, but fundamentally, Plaintiff fails to allege any fact connecting UF or its Board Members to these decisions or to the establishment of the state plan.

### *Argument*[1]

I.   *Plaintiff Lacks Article III Standing to Sue the UF Defendants.*

All of Plaintiff's Counts against the UF Defendants must be dismissed pursuant to Rule 12(b)(1), Fed. R. Civ. P., as this Court lacks subject matter jurisdiction over the Plaintiff's claims. This is because the Plaintiff cannot establish standing to sue the UF Defendants. To satisfy the constitutional restriction of federal courts' jurisdiction to "cases" and "controversies," "a plaintiff must demonstrate constitutional standing." *Bank of Am. Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296, 1302 (2017). Article III standing requires Plaintiffs show an "injury in fact" that is "fairly traceable" to the defendant's conduct and "that is likely to be redressed by a favorable judicial decision." *Id.* The party invoking federal jurisdiction bears the burden of proving standing. *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1265 (11th Cir. 2000).

To be sure, litigants must establish standing to sue under Title VII, but the burden under Title VII is weightier than the Article III standard. Only a "person aggrieved" may file suit under Title VII. 42 U.S.C. § 2000e–5(b), (f)(1). Standing for those "aggrieved" under Title VII must be construed more narrowly than the outer boundaries of Article III. Thompson v. N. Am. Stainless, LP, 562 U.S. 170,

---

[1] Because this Court is surely well-versed in the standard for adjudicating a motion to dismiss, it is omitted.

177-78 (2011). Instead of Article III standing, the proper test to determine standing under Title VII is the "zone of interests" test. Id. at 177. Under this test, review must be denied "if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." Id. (quoting *Clarke v. Secs. Indus. Assn.*, 479 U.S. 388, 399–400 (1987)). Moreover, the plain terms of Title VII only make actionable instances where an employer, as defined by the statute, takes an adverse employment action against an employee. 42 U.S.C. § 2000e—2(a).

Here, Plaintiff's alleged injuries are not fairly traceable to the challenged actions of the UF Defendants. In fact, the injuries are not traceable to these defendants at all. Moreover, a favorable decision by this Court on the Counts subject to this motion will not result in any remedy that the UF Defendants can provide as a matter of law. Stated another way, this Court cannot compel UF to do anything that would redress Plaintiff's injuries. Thus, Plaintiff cannot establish the requisite standing to proceed against these defendants warranting dismissal.

a.   *Plaintiff's Injuries Are Not Fairly Traceable to UF Defendants*

Article III standing requires "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party." *Hollywood Mobile Estates,* 641 F.3d at 1265 (quoting *Lujan v. Defs. of Wildlife,* 504

U.S. 555, 560 (1992)). Here, any injury allegedly suffered by the Plaintiff via denial of coverage for her requested procedures, is exclusively tied to the independent actions of a third party – DMS. The UF Defendants do not have any control over any aspect of the health insurance provided to state employees via the AvMed state insurance plan.

The Florida Legislature has expressly declared its intent that DMS "shall be responsible for *all aspects* of the purchase of health care for state employees under the state group health insurance plan or plans . . .." §110.123(3)(c), Fla. Stat. (2019). (emphasis supplied). The responsibilities assigned DMS by the Legislature include the "determination of health care benefits to be provided" and the "negotiation of contracts for health care and health care administrative services." *Id*.; *see also* §110.123(5)(a), Fla. Stat. (It is the duty of the DMS to "[d]etermine the benefits to be provided and the contributions to be required for the state group insurance program"). Plaintiff acknowledges DMS's statutory responsibilities as to the determination and provision of group health insurance for state employees. (Doc. 1 ¶ 37-40). To be sure, the University of Florida is a "State Agency" for purposes of the state insurance program.  §110.123(2)(i), Fla. Stat. The Plaintiff is a full-time employee of a state agency as defined in §110.123(2)(i), Fla. Stat., and she has voluntarily elected to participate in the group insurance program offered by DMS as an enrollee. §110.123(2)(b) & (c), Fla. Stat.

Nowhere in the Complaint does Plaintiff allege that the UF Defendants have any role in, or authority to, implement the state health plans, establish exclusions, solicit or choose providers, or otherwise control or influence any aspect of the state health plans. Further, there is no allegation in the Complaint that the UF Defendants were in any way involved in the decision to deny the Plaintiff her requested procedure. The hands of state agencies are tied because those agencies must offer the health plans selected by DMS, exclusions and all.

It was solely DMS's responsibility, both by statute and in practice, to select and define the contours of the benefits offered under the state health plan. Because the UF Defendants had no involvement in that process, no conduct of the UF Defendants is fairly traceable to the injury alleged in the Complaint.

Indeed, ultimately, the "fairly traceable" element of Article III standing is essentially a threshold showing that there is some causal connection between the injury and the actions of the defendants. *See Allen v. Wright,* 468 U.S. 737, 757 (1984) (holding that causation is a distinct requirement of standing apart from whether the requested relief might substantially remedy a threatened constitutional injury). This case is similar to numerous cases in which the Eleventh Circuit has found want of facts to establish the "fairly traceable" element of Article III standing and a lack of causal connection between the conduct alleged on the part of a defendant and the injury suffered.

For example, in *Doe v. Pryor,* several plaintiffs sued the Attorney General of Alabama to enjoin enforcement of a statute making "deviate sexual intercourse" a criminal offense. 344 F.3d 1282, 1285–86 (11th Cir. 2003). While one plaintiff lost a custody dispute based on the challenged statute, the Eleventh Circuit held that this injury was not "fairly traceable" to the Attorney General because the Attorney General played no role in that custody determination. *Id.* at 1285. What was lacking in *Doe* is the same as what is lacking here, any connection between the defendant and the injury. *Id.*; *see also Hollywood Mobile Estates,* 641 F.3d at 1265–67 (holding that injury was not fairly traceable to Secretary of the Interior, where there was no allegation that Secretary caused any injury, in that case, a forcible eviction of a leased property committed by the Seminole Tribe of Florida)*; Daogaru v. U.S. Attorney Gen.,* 683 Fed. App'x 824, 825-26 (11th Cir. 2017) (dismissing federal government defendant and finding that defendant's conduct was not fairly traceable to injury in complaint challenging federal firearms law prohibiting the plaintiff from possessing a firearm and ammunition in his home, where state law independently prohibited plaintiff from possessing a firearm)*; Allen*, 468 U.S. at 753 n.19, *abrogated in part on other grounds by Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) (holding that parents lacked standing to sue the IRS for their children's diminished ability to receive an education in a racially integrated school because, even though this was a cognizable injury, "whatever

deficiencies exist in the opportunities for desegregated education for [plaintiffs'] children might not be traceable to IRS violations of law").

If the bar for the "fairly traceable" element of Article III standing is as low as the facts of the Complaint suggest, then any denial of a benefit under the state plan by insurance providers such as AvMed, could lead to state agencies being hauled into court to defend an action it had nothing to do with. Just as in those situations, the decision to deny a particular claim for benefits, perhaps for cosmetic dentistry or laser eye surgery, that an employer is in no way a part of could lead to liability for a state agency even though it was in no way involved in that determination.

This simply is not the bar for standing in this Circuit. As the Eleventh Circuit has noted, a plaintiff lacks standing to challenge a rule if an independent source would have caused her to suffer the same injury. *Swann v. Sec'y, Georgia*, 668 F.3d 1285, 1288–89 (11th Cir. 2012); Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3531.5 (3d ed. 2008) ("Rather than a break in one causal chain, standing may be defeated by finding a different cause."). Here, you can substitute the UF Defendants for any state agency and the result would be the same because that result is *compelled* by DMS. Nothing is more probative of the lack of standing.

b.    *Plaintiff's Injuries Are Not Redressable by the UF Defendants*

For an injury to be redressable "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561. "Redressability is established . . . when a favorable decision 'would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redressed the injury suffered.'" *Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279, 1290 (11th Cir. 2010) (quoting *Harrell v. Fla. Bar*, 608 F.3d 1241, 1260 n.7 (11th Cir. 2010)). Courts must be able "to ascertain from the record whether the relief requested is likely to redress the alleged injury," *Steele v. Nat'l Firearms Act Branch*, 755 F.2d 1410, 1415 (11th Cir. 1985), and if they cannot, then there is no jurisdiction to entertain the action. *See DiMaio v. Democratic Nat'l Comm.*, 520 F.3d 1299, 1303 (11th Cir. 2008) (dismissing complaint for lack of standing because it did not "suggest in any way how [the] 'injury' could be redressed by a favorable judgment").

Plaintiff and her Co-Plaintiff, Kathryn Lane, seek, *inter alia*, equitable relief in the form of permanent injunctive relief against all of the defendants to: (1) cease enforcement of the State Plan Exclusion of coverage for "gender reassignment or modification services and supplies"; and (2) provide benefits that cover Plaintiffs' medically necessary gender affirming care. (Doc 1 p. 51).  Again, as DMS is the singular controlling entity as to the determination and administration of the state

health plans as provided pursuant to Chapter 110 Fla. Stat., a favorable decision against the UF Defendants will do absolutely nothing to redress the Plaintiff's alleged injuries. UF has no power to require DMS to alter the group health insurance plans already in effect. Moreover, UF Defendants cannot compel or require DMS, notwithstanding the current plans in effect, to provide funds that cover the benefits the Plaintiffs seek, nor do they have any inherent statutory authority to commit state funds for such use.

In fact, UF is statutorily prohibited from doing so as the state of Florida has exclusively made it the province and authority of DMS to control such terms. *See* section I(a), *supra*; *see also* §1001.706(6)(b), Fla. Stat. ("Unless specifically authorized by law, neither the Board of Governors nor a state university may offer group insurance programs for employees as a substitute for or as an alternative to the health insurance programs offered pursuant to chapter 110"). Accordingly, even if the Plaintiff is successful in Counts II or V, the harm suffered by Plaintiff cannot be redressed by the UF Defendants. As such Plaintiff lacks Article III standing to sue the UF Defendants. *See Doe*, 344 F.3d at 1285–86 (holding that injuries suffered by plaintiff in custody proceeding by virtue of criminal statute would not be redressed through lawsuit against the Alabama Attorney General where injunctive relief against the Attorney General would have done nothing to change the result the plaintiff suffered in the state court custody proceeding and nothing that the court

could order the Attorney General refrain from doing would address the harm suffered); *Hollywood Mobile Estates*, 641 F.3d at 1265–67 (holding plaintiff could not establish standing against Secretary of the Interior because plaintiff failed to show how a judgment against the Secretary would redress the harm caused by a third party).

## II.   Count V, Asserting Equal Protection Clause Violations is Barred by the Doctrine of Sovereign Immunity

Count V, brought pursuant to Section 1983, is lodged against the UF Board Members in their official capacities, and alleges a deprivation of rights under the Equal Protection Clause of the Fourteenth Amendment. This claim however is barred by the Eleventh Amendment, and, while technically styled as an *Ex Parte Young* claim, that legal fiction should not apply here.

"Dual sovereignty is a defining feature of our Nation's constitutional blueprint." *Sossamon v. Texas*, 563 U.S. 277, 283 (2011) (citation omitted). "Upon ratification of the Constitution, the States entered the Union 'with their sovereignty intact.'" *Id*. (citation omitted). It is a fundamental concept of Federalism that states yield their sovereignty only with respect to matters exclusively assigned to the federal government. *See Blatchford v. Native Vill. of Noatak*, 501 U.S. 775, 779 (1991). This concept underlies the Eleventh Amendment of the Constitution which limits the power of federal courts to hear certain lawsuits brought against states. *See* U.S. Const. amend. XI; *P.R. Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506

U.S. 139, 143-46 (1993). The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state . . .." U.S. Const. Amend. XI.

The Amendment has been interpreted by the Supreme Court to forbid lawsuits brought by citizens of a state against their own state in federal courts under most circumstances. Congress may abrogate state sovereign immunity if it has unequivocally expressed its intent to abrogate the immunity and if it has acted pursuant to a valid exercise of power. *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 55 (1996). The doctrine of sovereign immunity has been interpreted to bar suits against an unconsenting state brought by private parties regardless of the nature of the relief sought. *See id*.; *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

Sovereign immunity, as embodied in the Eleventh Amendment, precludes actions brought pursuant to Section 1983 against state entities for money damages and for injunctive relief. Indeed, state entities and state officials sued in their official capacities are not "persons" subject to suit under Section 1983. *See Will v. Mich. Dep't of State Police,* 491 U.S. 58, 70–71 (1989). The state of Florida has not waived its immunity to suits under Section 1983. *See Gamble v. Fla. Dep't of Health & Rehab. Servs.*, 779 F.2d 1509, 1513-20 (11th Cir. 1986).

Nevertheless, the Eleventh Amendment and the doctrine of sovereign immunity does not preclude suits against state officers in their official capacity for prospective injunctive relief when the state officers' alleged actions are in violation of federal law. *Ex Parte Young*, 209 U.S. 123 (1908); *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011). This is because such suits, including suits under Section 1983, are not treated as suits against the state itself. *Will*, 491 U.S. at 71 n. 10.

The *Ex Parte Young* doctrine creates a legal fiction allowing a claim against a state officer to redress continuing violations of federal law. *Verizon Md. Inc. v. Public. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). However, only prospective injunctive or declaratory relief may be sought against a state official under *Ex Parte Young. See Green v. Mansour*, 474 U.S. 64, 68 (1985); *Fla. Ass'n of Rehab. Facilities, Inc.*, 225 F.3d 1208, 1219 (11th Cir. 2000). The exception does not allow a plaintiff "to adjudicate the legality of past conduct." *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1337-38 (11th Cir. 1999) ("*Ex parte Young* requires the allegation of an ongoing and continuous violation of federal law.")

Moreover, *Ex parte Young* cannot "operate as an exception to ... sovereign immunity where no defendant has any connection to the enforcement of the challenged law at issue." *Id.* at 1341. Thus, before the exception applies, the "state officer [named as a defendant in his official capacity must have] the authority to enforce an unconstitutional act in the name of the state." *Id.*

The Equal Protection Clause claim brought pursuant to Section 1983 against the UF Board Members in their official capacities must be dismissed because, while the counts are pled in a manner suggesting that Plaintiff seeks only prospective declaratory and injunctive relief to redress ongoing violations of the law, the Complaint's allegations actually reflect an attempt to dress-up claims for the monetary redress of a past harm as a request for prospective injunctive relief. Further, as state law makes clear, the UF Board Members simply have no influence, effect, or authority to dictate the terms of the state health plan challenged by the Plaintiff.

> a.     *Count V Against the UF Board Members in their Official Capacities is, in Essence, Brought Against the State and for Retrospective Monetary Relief*

The *Ex Parte Young* fiction does not apply if the prospective relief sought by a plaintiff is the functional equivalent of money damages. In those situations, where the damages are "measured in terms of a monetary loss resulting from a past breach of a legal duty," sovereign immunity would bar a claim even brought against state officials in their official capacities. *Edelman v. Jordan*, 415 U.S. 651, 668 (1974). "[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Ford*

*Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945) (overruled on other grounds).

Here, while Plaintiff alleges she is seeking only prospective declaratory and injunctive relief to redress an ongoing violation of the law on the part of the UF Board Members, the Complaint cannot avoid the application of the doctrine of sovereign immunity merely through creative pleading. Contrary to the tenor of the Complaint, it is clear the Plaintiff is actually seeking a declaration that the denial of her requested procedures and the application of the gender-identity exclusion was unlawful. This is not a case where the Complaint pleads an ongoing violation of a federal law, or the entitlement to prospective injunctive relief against state officials in anything but a nominal sense.

Indeed, "cases in which that relief is intended indirectly to encourage compliance with federal law through deterrence or simply to compensate the victim" are not appropriate for *Ex Parte Young* actions. *See Fla. Ass'n of Rehab. Facilities, Inc.*, 225 F.3d at 1219. *Ex Parte Young* actions are for those situations in which the remedies end a continuing violation of federal law and are necessary to vindicate federal interest in securing the supremacy of the law, but not where the interest is compensatory or deterrence. *Id.* at 1219-21. The instant matter is essentially an appeal of a past denial of claims for benefits under the plans, dressed up as a claim for prospective injunctive relief.

*Seminole Tribe of Fla. v. Fla. Dep't of Revenue*, 750 F.3d 1238 (11th Cir. 2014), is instructive. There, the Eleventh Circuit considered whether *Ex Parte Young* applied where a tribe sought a declaratory judgment that it was exempt from Florida's fuel tax. The Eleventh Circuit found the State was the "real, substantial party in interest" because the suit was in essence "a suit for monetary relief to be financed by the Florida fisc." *Id*. at 1244. The Court reasoned that the "relief that the Tribe seeks is equitable in name only[,]" because, due to the structure of Florida's tax laws, a "declaratory ruling that the Tribe is exempt from the tax would amount to a judgment that the Tribe is entitled to a refund under Florida law" money that necessarily would have to come from state coffers. *Id.* The Court noted the refund would amount to a money judgment against Florida. *Id.* The Court also noted that, even if the relief sought "could conceivably be described as prospective in nature[,]" the relief is nothing "other than an award of damages." *Id.*

Just as in *Seminole Tribe*, the Plaintiff here seeks relief that is prospective and equitable in name only. The effect of finding that the terms of the state health plan or its application to the Plaintiff are unconstitutional, is to redress a past harm suffered by the Plaintiff and require the state to expend monies to fund the procedures Plaintiff contend were unlawfully denied. This is hardly akin to the proper cases for prospective injunctive relief appropriately brought against state officials in their official capacities to cease ongoing violations federal law, for

example, to require state officials to remove a display of the Ten Commandments from a state capitol building; *Van Orden v. Perry,* 545 U.S. 677 (2005); or to challenge state officials on the constitutionality of a statute concerning school prayer. *Wallace v. Jaffree,* 472 U.S. 38 (1985). The distinction makes a difference, and warrants dismissal of the claims as to the UF Board Members in their official capacities. *See Fla. Ass'n of Rehab. Facilities, Inc.*, 225 F.3d at 1221 ("[T]he Eleventh Amendment's immunity is triggered when a declaration or injunction effectively calls for the payment of state funds as a form of compensation for *past* breaches of legal duties by state officials")

> b.   *The UF Board Members Lack any Authority to Enforce the State Health Plan Exclusion*

Just as the UF Defendants cannot redress any harm suffered by Plaintiff, they are not authorized to establish or enforce the terms of the exclusion in the state health plan, rendering an *Ex Parte Young* claim inappropriately pled against the UF Board Members in their official capacities. Under *Ex Parte Young*, a litigant must bring her case "against the state official or agency responsible for enforcing the allegedly unconstitutional scheme." *Osterback v. Scott*, 782 F. App'x 856, 858–59 (11th Cir. 2019) (quoting *ACLU v. The Florida Bar*, 999 F.2d 1486, 1490 (11th Cir. 1993)).

Indeed, unless the state officer sued in his official capacity has some responsibility to enforce the statute or provision at issue, the "fiction" of *Ex parte Young* cannot operate. Only if a state officer has the authority to enforce an

unconstitutional act in the name of the state can the Supremacy Clause be invoked to strip the officer of his official or representative character and subject him to the individual consequences of his conduct. *Summit Med. Assocs., P.C*, 180 F.3d at 1341 (citing Ex *Parte Young*). Where the named defendant lacks any responsibility to enforce the statute or scheme at issue the real party in interest is the state and the suit remains barred by the Eleventh Amendment." *Summit Med. Assocs.*, 180 F.3d at 1341.

The fact of the matter is that the health insurance offered to the Plaintiff is not determined by UF.  DMS is tasked by statute with establishing the health care plans, exclusions and all. The UF Board Members are not authorized in any way to solicit bids for health insurance plans, establish exclusions, or otherwise dictate to Plaintiff the contours of healthcare coverage. That is DMS's responsibility. Indeed, the UF Board Members were not involved in the decision to even deny the Plaintiff's claim for benefits.

Because the UF Board Members lack the authority to establish the state health plan or enforce any exclusion that Plaintiff alleged caused her harm, the fiction of *Ex Parte Young* simply does not hold water. *See Osterback*, 782 Fed. App'x at 858–59 (holding that suit against the Governor of Florida in his official capacity was barred by sovereign immunity and not subject to *Ex Parte Young* exception because, while the Governor had constitutional and statutory authority to enforce the law and

oversee the executive branch, the responsibility for the enforcement of a challenged provision rested with the Division of Administrative Hearings). The non-fiction is that the Complaint is a suit against the state, and the challenge lodged against the UF Board Members in their official capacities are barred by the doctrine of sovereign immunity.

### ***<u>Conclusion</u>***

For the foregoing reasons, the UF Defendants request that this Court dismiss Count's II and VI of the Complaint, with prejudice.

Respectfully submitted this 27th day of February, 2020.

/s/ Jeffrey D. Slanker
**JEFFREY D. SLANKER**
Florida Bar No. 100391
E-mail: jslanker@sniffenlaw.com
**MICHAEL P. SPELLMAN**
Florida Bar No. 937975
E-mail: mspellman@sniffenlaw.com
**MARK K. LOGAN**
Florida Bar No. 0494208
E-mail: mlogan@sniffenlaw.com

**SNIFFEN & SPELLMAN, P.A.**
123 North Monroe Street
Tallahassee, Florida 32301
Telephone: (850) 205-1996
Facsimile: (850) 205-3004

*Attorneys for the UF Defendants*

## WORD COUNT CERTIFICATION

This document complies with word limits set forth in N.D. Fla. Local Rule 7.1(F), and contains 5,050 words, which includes the headings, footnotes, and quotations, but does not include the case style, signature block or Certificates of Word Count and Service.

/s/ Jeffrey D. Slanker
**JEFFREY D. SLANKER**

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 27th day of February, 2020, a true and correct copy of the foregoing was electronically filed in the U.S. District Court, Northern District of Florida, using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ Jeffrey D. Slanker
**JEFFREY D. SLANKER**