**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

JAMI CLAIRE, et al.,

      Plaintiffs,

vs.                      Case No. 4:20-cv-00020-MW/MAF

FLORIDA DEPARTMENT OF
MANAGEMENT SERVICES, et al.,

      Defendants.

_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO**
**DEFENDANTS' MOTIONS TO DISMISS**

      Plaintiffs Jami Claire, Kathryn Lane, and Ahmir Murphy ("Plaintiffs")

oppose the Motions to Dismiss Counts II, III, IV, VI, VII, and VIII of Plaintiffs'

Amended Complaint by Defendants University of Florida Board of Trustees

and University of Florida Board of Trustees Members ("UF") (ECF 58)

(Counts II and VI), and Andy Thomas, Public Defender for the Second

Judicial Circuit ("Public Defender"), Florida Department of Corrections

("FDOC"), and Secretary Inch (ECF 66) (Counts III, IV, VII, and VIII).[1]

_____

[1] Defendants Public Defender and FDOC filed an Amended Motion to
Dismiss on June 23, 2020 (ECF 66), and withdrew their argument that the
Amended Complaint failed to state a claim for sex discrimination under Title
VII following the decision in *Bostock v. Clayton Cnty. Ga.,* 590 U.S. __, No.

## INTRODUCTION

Plaintiffs[2] are transgender state employees - Jami Claire is a Senior Biological Scientist employed by UF, Kathryn Lane is an appellate attorney employed by Public Defender Andy Thomas, and Ahmir Murphy is a Correctional Sergeant employed by FDOC. Plaintiffs have pursued different career paths and are employed by three different state agencies, but they share a common experience: they have each been subjected to sex discrimination under Title VII and the Equal Protection Clause through the employer-sponsored health insurance plans ("State Plans") provided to them by their respective employers. (ECF 34, at 2-3 ¶¶ 1-4; 4-5 ¶¶ 8-10; 6-13 ¶¶ 13-38; 14 ¶¶ 44-47; 15-16 ¶¶ 55-56; 17-28 ¶¶ 60-112; 29-36 ¶¶ 118-54; 37-45 ¶¶ 163-201; 46-49 ¶¶  204-18; 51-58 ¶¶ 225-61; 59-61 ¶¶ 265-74.) *See Bostock v. Clayton Cnty. Ga.,* 590 U.S. __, No. 17–1618, No. 17–1623, No. 18–107, 2020 WL 3146686, at *7-8 (June 15, 2020) (Supreme Court unequivocally concluded that discrimination against a person because they are transgender is discrimination based on sex and violates Title VII); *Glenn v. Brumby*, 663 F.3d 1312, 1316 (11th Cir. 2011) (discrimination against a

---

17–1618, No. 17–1623, No. 18–107, 2020 WL 3146686, at *7-8 (June 15, 2020).

[2] Unless otherwise indicated, "Plaintiffs" refers to Plaintiffs Jami Claire, Kathryn Lane, and Ahmir Murphy.

transgender individual based on their gender non-conformity constitutes sex discrimination under the Equal Protection Clause)*; Winstead v. Lafayette,* 197 F. Supp. 3d 1334, 1345 (N.D. Fla. 2016) (gender stereotype discrimination is a cognizable form of sex discrimination).

Defendants[3] are state agencies[4] - UF is a public university within the State university system, the Public Defender is a constitutionally elected official, and FDOC is the largest agency of the State's government. Through the state group insurance program, each Defendant provides the State Plans to its employees, including Plaintiffs, as part of their compensation for employment. The State Plans contain a categorical exclusion for medically necessary gender-affirming care, and as such treat transgender individuals differently on the basis of sex. It is only by virtue of their employment by Defendants that Plaintiffs have been subjected to the facially discriminatory State Plans that force transgender individuals to forego medically necessary care.

Defendants Public Defender, UF, and FDOC move to dismiss all six of Plaintiffs' claims for failure to demonstrate Article III standing, and

---

[3] Unless otherwise indicated, "Defendants" refers to the moving parties, Defendants UF, Public Defender, and FDOC, and does not include Defendant Florida Department of Management Services ("DMS").

[4] Defendants are considered "state agencies" for purposes of the state group insurance program. Fla. Stat. § 110.123(2)(i) (2019).

additionally move to dismiss Plaintiffs' Equal Protection claims under the doctrine of sovereign immunity. Plaintiffs respectfully request that this Court deny Defendants' motions because: (1) Plaintiffs have Article III standing to challenge Defendants' discriminatory acts under Title VII and the Equal Protection Clause; and (2) sovereign immunity does not bar Plaintiffs' Equal Protection claims.

## ARGUMENT

## I.   Plaintiffs Have Article III Standing.

Defendants Public Defender, FDOC, and UF argue Plaintiffs "failed to demonstrate standing" because "[n]one of the alleged injuries are fairly traceable to, or can be redressed by" Defendants.[5] (ECF 58, at 2; ECF 66, at 2.) Defendants' arguments lack merit. Establishing standing at the pleading stage is not onerous. *Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279, 1286 n.8 (11th Cir. 2010) (court must consider the well-pleaded allegations in the plaintiff's complaint as true). General factual allegations of injury resulting from a defendant's conduct satisfy Article III standing at the pleading stage, for courts "'presume that general allegations embrace those

---

[5] Defendants Public Defender, FDOC and UF ask this Court to ignore their role in the discriminatory conduct at issue here and instead place the blame squarely on Defendant DMS, which has elected to file an Answer. (ECF 58, at 6-7, 14, 15-16; ECF 66, at 8-9, 15, 17; ECF 57).

specific facts that are necessary to support the claim.'" *Id.* at 1286; *see also Young Apartments, Inc. v. Town of Jupiter, Fla.*, 529 F.3d 1027, 1038 (11th Cir. 2008).

Plaintiffs have Article III standing to challenge employment discrimination by Defendants in violation of Title VII and the Equal Protection Clause of the U.S. Constitution. Plaintiffs pleaded sufficient facts, taken as true, to demonstrate they suffered an injury in fact that is traceable to Defendants and is likely to be redressed by a favorable ruling. (ECF 34, at 2-3 ¶¶ 1-4; 4-5 ¶¶ 8-10; 6-8 ¶¶ 13-18; 14 ¶¶ 44-47; 15-16 ¶¶ 55-56; 18 ¶ 64; 25 ¶¶ 96-99; 26-28 ¶¶ 103-112; 29 ¶ 118; 33 ¶¶ 139-42; 37-38 ¶ 163; 44-45 ¶¶ 193-201; 46-49 ¶¶ 204-18; 51-58 ¶¶ 225-61; 59-61 ¶¶ 265-74). *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136 (1992) (Plaintiff must show injury-in-fact, causal connection between injury and conduct complained of, and likely that injury will be redressed by favorable decision). This Court should deny Defendants' Motions to Dismiss Counts II, III, IV, VI, VII, and VIII.

### a.   Plaintiffs have suffered an injury in fact.

Defendants do not dispute Plaintiffs suffered injuries in fact. Defendants only argue Plaintiffs' injuries cannot be traced to their actions and cannot be redressed by this Court's favorable ruling. (ECF 58, at 2; *id.*

at 5-17; ECF 66, at 2; *id.* at 7-19.) Indeed, Defendants cannot dispute that Plaintiffs have a legally cognizable interest that was, and continues to be, invaded. *See Lujan*, 504 U.S. at 560-61. The invasion of a protected legal right, including one created by a statute such as Title VII, is a recognized injury. *Palm Bch. Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1251-52 (11th Cir. 2015). Plaintiffs' allegations that Defendants offered them discriminatory health insurance plans in violation of Equal Protection and Title VII are therefore sufficient injuries to establish Article III standing. (ECF 34, at 3 ¶ 3; 6-8 ¶¶ 13-18; 14 ¶¶ 44-47; 15-18 ¶¶ 55-56, 60-63; 23-28 ¶¶ 86-112; 31-36 ¶¶ 135-54; 41- 45 ¶¶ 179-201; 46-49 ¶ 204-18; 51-58 ¶¶ 225-61; 59-61 ¶¶ 265-74.)

> **b. Plaintiffs' injuries are fairly traceable to Defendants.**

Defendants erroneously aver they did not cause Plaintiffs' respective injuries. They argue Defendant DMS exclusively caused Plaintiffs' injuries (ECF 58, at 6; ECF 66, at 8), because "[i]t was solely DMS's responsibility to select and define the contours of the benefits offered under the state health plan." (ECF 58, at 7; ECF 66, at 9.) Defendants claim their proverbial hands were tied and that none of their conduct has a genuine nexus to Plaintiffs' injuries. (ECF 58, at 6-8, 14; ECF 66, at 8-9, 15-16.) This argument is a distortion of the facts and the law.

Article III standing requires Plaintiffs to allege "a causal connection between the injury and the conduct complained of—the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.'" *Lujan*, 504 U.S. at 560. To show that their injury is "fairly traceable" to Defendants' conduct, Plaintiffs are not required to prove proximate causation. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012) ("Even a showing that a plaintiff's injury is indirectly caused by a defendant's actions satisfies the fairly traceable requirement."). Plaintiffs' injuries are caused by discriminatory healthcare benefits provided to them by Defendants, their employing agencies, as compensation for employment. (ECF 34, at 4-5 ¶¶ 8-10; 14 ¶¶ 44-47.) These allegations are legally sufficient to establish their injuries are fairly traceable to Defendant's conduct at the pleading stage. *Young Apartments*, 529 F.3d at 1044 ("a standing ruling at the motion to dismiss stage should only address the sufficiency of the allegations in a complaint, not their merits").

Nevertheless, the Public Defender, FDOC and UF Defendants erroneously argue Plaintiffs lack standing because Defendants did not engage in affirmative, active participation in the State Plan's operation and administration with Defendant DMS, because they neither created nor

principally administer the State Plan. (ECF 58, at 11-13; ECF 66, at 12-14, relying on *Morgan v. Safeway Stores, Inc.*, 884 F.2d 1211, 1214-15 (9th Cir. 1989).)[6] Plaintiffs do not dispute, and in fact affirmatively allege, their injuries are also fairly traceable to Defendant DMS for its part in offering and adopting the discriminatory plans to state employees. (ECF 34, at 5-6 ¶¶ 11-12; 13-14 ¶¶ 39-43; 14-16 ¶¶ 48-49, 53-57; 17 ¶¶ 59-62; 49-51 ¶¶ 219-24; 58-59 ¶¶ 262-64). But this does not allow the moving Defendants, as the employing state agencies, to disclaim responsibility for their participation in the discrimination. As observed *supra*, Plaintiffs need not demonstrate affirmative, active participation to satisfy standing requirements at the pleading stage.  Plaintiffs need only present allegations legally sufficient to establish their injuries are fairly traceable to the Defendants.  Therefore, Plaintiffs are not legally required to demonstrate that Defendants created or principally administer the plan to prove their injuries are fairly traceable to their employing agencies. Indeed, the Supreme Court has held that state

---

[6] Defendants' reliance on *Morgan* is misplaced. *Morgan* involved a question of employer liability under Title VII at the summary judgment stage. It has nothing to say about standing. It is also factually inapposite as it involved whether Safeway and a credit union that offered benefits to Safeway's employees were "joint employers" such that Safeway was liable for discriminatory actions by the credit union. This is a far cry from the legal relationship between subdivisions of the state — Defendant DMS, who is statutorily delegated legal authority for administering benefits offered to all State of Florida employees, and Plaintiffs' employing state agencies.

agencies "cannot disclaim responsibility" for the discriminatory features of the health plans offered by the state's insurers. *Ariz. Governing Comm. for Tax Deferred Annuity & Deferred Comp. Plans v. Norris*, 463 U.S. 1073, 1089 (1983) (Marshall, J., majority concurrence).

The Supreme Court's *Norris* decision is instructive. There, Norris, an employee with the State of Arizona's Department of Economic Security, brought her Title VII claims against her employer—the State of Arizona—and components of the state government administering the deferred compensation plan. *Id.* at 1078; *see also Norris v. Ariz. Governing Comm. for Tax Deferred Annuity & Deferred Comp. Plans*, 486 F. Supp. 645, 647 (N.D. Ariz. 1980). Arizona bore the cost of making the necessary payroll deductions, but neither the state agency administering the state pension plan nor Norris' employing agency contributed monetarily to the state's employees' deferred compensation benefits to supplement its employees' deferred wages. *Norris*, 462 U.S. at 1077. That Norris' employing agency failed to contribute monetarily to the plan did not obviate her employer's causal nexus to Norris' injuries. *See id.* 1089 ("Under these circumstances, there can be no serious question that petitioners are legally responsible for the discriminatory terms on which annuities are offered"). And although the specific component of the state government administering the deferred

9

compensation plans was not Norris' employing agency, the Court concluded, "employers are ultimately responsible for the 'compensation, terms, conditions, [and] privileges of employment' provided to employees," "regardless of whether third parties are also involved in the discrimination." *Id.* Any employer who adheres to or provides fringe benefits to its employees that discriminate on the basis of sex has a causal nexus to their employee's injuries. *See id.* at 1089-91.

*Kadel v. Folwell*, __ F. Supp. 3d__, Case No. 1:19CV272, 2020 WL 1169271 (M.D.N.C. Mar. 11, 2020), offers further support. There, the plaintiffs alleged North Carolina's healthcare plans violated the Equal Protection Clause, Title IX of the Education Amendments Act, and Section 1557 of the Affordable Care Act, because the plans categorically excluded gender-affirming medical care. *Id.* at *1. They brought their claims against the three state universities employing them, the state treasurer, the state agency administering the state plan, and its officer. *Id.* The universities claimed the plaintiffs' injuries were not traceable to them because they could not dictate the state health plan's terms. *Id.* at *3-4. Rejecting these state employers' argument, the district court concluded the plaintiffs' allegations concerning their employers offering the state plan to the plaintiffs and participating in the plans' availability sufficiently demonstrated plaintiffs'

injuries were fairly traceable to the defendants at the pleading stage. *Id.* at *4. Had the state universities not hired the plaintiffs, "they would not have been permitted to enroll in the [p]lan at all." *Id.*

Similarly, Plaintiffs allege each of the state entities employing them offer the Plaintiffs the discriminatory State Plans as compensation for employment in the instant matter. (ECF 34, at 2-3 ¶¶ 1-4; 4-5 ¶¶ 8-10; 13 ¶ 39; 14 ¶¶ 44, 46-47; 17-18 ¶ 62-64; 27 ¶ 106; 29 ¶ 118; 37-38 ¶ 163; 45 ¶ 201; 46-49 ¶¶ 204-18; 51-58 ¶¶ 255-61; 59-61 ¶¶ 265-74.) The Public Defender, UF, and FDOC Defendants implicitly concede they employ Plaintiffs. (ECF 58, at 7; ECF 66, at 9.)  Defendants only offer and provide Plaintiffs the option of participating in the discriminatory health insurance plans that fail to provide them with medically necessary gender-affirming care and treatment. (ECF 34, at 14 ¶¶ 44-47; 15-16 ¶¶ 54-56.)

If the State Plans were not offered by the State, the Public Defender, UF, and FDOC would have to offer employee health insurance individually. The employing agencies rely on the State Plans to structure employee compensation packages and use the State Plans to attract and retain employees. (*See* ECF 34, at 1 ¶ 1 (the State Plans are "compensation for employment"), 14 ¶¶ 44, 46-47.) *See also* Fla. Stat. § 110.123(m) (2019) (defining the "state group insurance program" as the package of insurance

plans offered to state employees, including the state group health insurance plans).

Plaintiffs are only offered the State Plans because they are state employees by virtue of their employment with state officers, universities, or agencies as defined in the statutory scheme creating this program. *See* Fla. Stat. § 110.123(2) (2019); c*f. Boyden v. Conlin*, 341 F. Supp. 3d 979, 982-86 (W.D. Wis. 2018) (transgender employees of the University of Wisconsin were provided discriminatory health insurance plans by their state employers through the Wisconsin Group Health Insurance Program). The State Group Health Insurance Program is legislatively created and authorized. Fla. Stat. § 110.123 (2019). The employing agencies have statutory and regulatory responsibilities making their involvement essential for the program to operate. The employing agencies' responsibilities include: (a)  processing their employees' applications to enroll in the State Plans, (b) verifying the employee is either in an open enrollment period or has had a qualifying life event that allows a change in coverage, and (c) certifying to the State that employee is eligible for coverage.  Fla. Admin. Code R. 60P-2.002(5)-(6).

The employing agencies are then responsible for tracking employee status changes affecting coverage. *See, e.g., id.* 60P-2.002(9) (requiring employing agency to notify surviving spouse of options for continuing

coverage if employee dies); *id.* 60P-2.012 (changes in coverage due to leave without pay, suspension, layoff, or disability leave are processed by employing agency). The employing agency is responsible for processing employee applications to change coverage, and effective dates of coverage are determined based on when the employing agency enters the information into the state insurance computer system data base. *Id.* 60P-2.003(7)(a); *id.* 60P-2.004(2)(a).

The employing agencies also have a responsibility to share part of the cost of their employee's coverage, and to collect payment from the employee for the employee's share of the cost. Fla. Stat. § 110.123(4) (2019); Fla. Admin. Code. R 60P-2.006. Each employing agency contributes monetarily to Plaintiffs' membership to the State Plans, bears the costs of making the necessary payroll deductions, and must withhold appropriate sums from the employees' wages to channel those sums into the employees' designated plans. Fla. Stat. §§ 110.123(4)(b)&(c) and *id.* § 110.14. *See Norris*, 462 U.S. at 1077. If an employee goes off payroll due to leave, suspension, or layoff, it is the employing agencies' responsibility to collect the employee's premium payments until coverage change is effective. Fla. Admin. Code R. 60P-2.012. If the employing agency fails to forward required contributions to the

State within 60 days, the State can initiate a collection action against the agency. *Id.* 60P-2.006(2)(a)(2).

In short, the State Group Health Insurance Program could not function without the substantial involvement, assistance, and financing from Defendants Public Defender, UF, and FDOC.[7] That Defendant DMS may define the coverage of the state's health insurance plans ("State Plans") offered to state employees does not negate the Public Defender, UF, and FDOC Defendants' participation in offering the discriminatory terms of employment to Plaintiffs as part of their compensation packages. *See Norris*, 463 U.S. at 1089-91, 1089 n.21.  At the motion to dismiss stage, such facts provide a sufficient nexus between the alleged injuries and Defendants to demonstrate their injuries are fairly traceable to their employing agencies. *See Kadel*, 2020 WL 1169271, at *4.

---

[7] Defendants' reliance on *Jacobson v. Fla. Sec'y of State*, 957 F.3d 1193 (11th Cir. 2020), is unavailing. The statutory scheme involved in *Jacobson* conferred exclusive authority to identify the order and print the names of the political candidates appearing on election ballots to the counties' Supervisors of Election. *Id.* at 1207. Therefore, Florida's Secretary of State could not have contributed to the harm about which the voters and organizational plaintiffs complained. *Id.* Unlike *Jacobson*, Plaintiffs' employing agencies and DMS share responsibility in the instant matter, and all of the relevant parties are before this Court. *Id.*

### c.   A favorable decision of this Court will redress Plaintiffs' injuries.

Defendants argue the constitutional and statutory injuries Plaintiffs suffer are not redressable. (ECF 58, at 15-16; ECF 66, at 17-18.) This argument fails. Where, as here, a lawsuit challenges the legality of government action that directly impacts the plaintiff, "there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Lujan*, 504 U.S. at 561-62. Even where the ultimate resolution of a claim is "dependent on many factors outside the [defendant's] control," a claim remains redressable so long as "an order against the named defendants would offer some relief." *Chiles v. United States*, 69 F.3d 1094, 1096 (11th Cir. 1995).

Plaintiffs establish redressability because "a favorable decision 'would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered.'" *Harrell v. The Fla. Bar*, 608 F.3d 1241, 1260 n.7 (11th Cir. 2010). Plaintiffs allege an ongoing harm due to Defendants' provision of discriminatory terms and conditions of employment. An injunction abating that harm and preventing future recurrence would redress this injury. For example, *Norris* suggests a

straightforward remedy: the employer can "supply the fringe benefit [itself], without the assistance of any third party." 463 U.S. at 1091.[8]

This Court can therefore remedy the injury suffered by enjoining enforcement of the discriminatory coverage exclusion in the State Plans pursuant to Title VII and the Equal Protection Clause and/or ordering Defendants to provide benefits directly. (ECF 34, at 62-63.) Plaintiffs' claim for damages under Title VII likewise demonstrates redressability of Plaintiffs' injuries. *Id.; see also Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012) ("Plaintiffs allege a monetary injury and an award of compensatory damages would redress that injury."); *Kadel*, 2020 WL 1169271, at *4 (rejecting defendants' redressability argument and observing plaintiffs would benefit from monetary damages for their Title IX claims and/or injunctive relief that ordered their employers to provide nondiscriminatory health insurance). Defendants' standing arguments should therefore be rejected.

---

[8] Defendants make no argument as to why this remedy could not be ordered. And Plaintiffs allege that UF already offers alternatives to State Plans that do not contain the discriminatory exclusion for gender-affirming care. (ECF 34, at 27-28 ¶¶ 107-12.)

## II.   Sovereign Immunity Does Not Bar Plaintiffs' Equal Protection Clause Claims.

Defendants attempt to shield themselves from liability for violating the Equal Protection Clause by claiming Eleventh Amendment sovereign immunity forecloses Counts VI, VII and VIII of Plaintiffs' Amended Complaint. (ECF 58, at 17-22; ECF 66, at 19-24.) Specifically, Defendants claim the Eleventh Amendment grants them immunity because they "have no influence, affect or authority to dictate the terms of the state health plans." (ECF 58, at 19-20; ECF 66, at 21-22.) Defendants' sovereign immunity defense lacks merit for two reasons. First, Plaintiffs' constitutional claims properly seek declaratory and prospective injunctive relief for ongoing violations of federal law as authorized by *Ex parte Young,* 209 U.S. 123 (1908). Second, Defendants are Plaintiffs' employers, and thus are proper parties against whom this Court can order relief to remedy denial of equal protection in the workplace. *See Luckey v. Harris*, 860 F.2d 1012, 1015-16 (11th Cir. 1988). This Court should deny Defendants' motions.

First, Plaintiffs' claims are clearly authorized by *Ex parte Young*. To determine whether the doctrine of *Ex parte Young* eliminates an Eleventh Amendment bar, courts are instructed to conduct a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub.*

*Serv. Comm'n of Md.*, 535 U.S. 636, 645 (2002). When a prayer for relief and associated allegations demonstrate the state official can be restrained from enforcing a policy that contravenes the Equal Protection Clause, that "clearly satisfies [the] 'straightforward inquiry.'" *Id.*

Counts VI, VII, and VIII of Plaintiffs' Amended Complaint only seek declaratory judgment and prospective injunctive relief, not money damages. (ECF 34, at 55-58, ¶¶ 242-61; 59-61 ¶¶ 265-74, 62 ¶¶ A, B.) Plaintiffs allege an ongoing and persistent violation of the Equal Protection Clause because, as part of compensation for employment, Defendants only offer them health insurance that categorically exclude gender-affirming care. (*Id.* at 60-61 ¶¶ 268, 271, 274.) A prospective injunction requiring Defendants to stop offering discriminatory health insurance or otherwise provide benefits to cover Plaintiffs' medically necessary gender-affirming care would abate the harm. (*Id.* at 4-5 ¶¶ 8-10; 8 ¶ 20; 15-17 ¶¶ 54-61; 17-18 ¶ 63; 59-61 ¶¶ 265-74.) Thus, Plaintiffs adequately allege facts and plead relief to overcome Eleventh Amendment immunity.

Second, Defendants are proper parties against whom relief may be ordered because they have "some connection" to the constitutional violation. *See Luckey*, 860 F.2d at 1015-16. As the Eleventh Circuit explained:

> Personal action by defendants individually is not a
> necessary condition of injunctive relief against state

> officers in their official capacity. All that is required is
> that the official be responsible for the challenged
> action. As the *Young* court held, it is sufficient that
> the state officer sued must, 'by virtue of his office,
> ha[ve] some connection' with the unconstitutional act
> or conduct complained of. '[W]hether [this
> connection] arises out of general law, or is specially
> created by the act itself, is not material so long as it
> exists.'

*Id.* (quoting *Ex parte Young*, 209 U.S. at 157).

As observed in § I.b., Defendants have more than "some connection" with the alleged unconstitutional conduct because they are Plaintiffs' employers and are sued for employment discrimination. But Defendants erroneously contend they have no connection to the ongoing harm caused by their provision of discriminatory healthcare benefits, because administration of the State Plans is delegated by state statute to Defendant DMS. (ECF 58, at 2, 6-7, 11-12, 15-16, 20; ECF 66, at 2, 8, 13-14, 17-18, 22.) *See also* Fla. Stat. § 110.123 (2019). Defendants' reliance on *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326 (11th Cir. 1999), to support this erroneous contention is misplaced. (ECF 58, at 19-20; ECF 66, at 21-22.) *Summit* stands for the uncontroversial proposition that "the doctrine of *Ex parte Young* cannot operate as an exception to [a state's] sovereign immunity where no defendant has any connection to the enforcement of the challenged law at issue." 180 F.3d at 1341.

Plaintiffs do not dispute that, to fall under the exception of *Ex parte Young*, they must demonstrate Defendants have *some* connection to the unlawful conduct. *Luckey*, 860 F.2d at 1015-16. However, Defendants' contention that they have *no* connection to the discriminatory conduct is false.

As part of compensation for Plaintiffs' employment, Defendants chose to offer and are mutually responsible for the operation of the state health insurance program for their employees as detailed above. That Defendant DMS is tasked with soliciting and administering insurance that contains the discriminatory exclusion in the State Plans cannot obviate the employing agency Defendants' connection to the constitutional harm. Defendants failed, and continue to fail, to provide Plaintiffs health insurance plans equivalent to the plans that cover medically necessary care and treatment offered to Defendants' other employees.[9] (ECF 34, at 2-3 ¶¶ 1-4; 4-5 ¶¶ 8-10; 6-28 ¶¶ 13-39, 44-47, 55-56, 60-112; 29-36 ¶¶ 118-54; 37-45 ¶¶ 163-201; 46-49 ¶¶ 204-18; 55-58 ¶¶ 242-61; 59-61 ¶¶ 265-74.) Instead, as part of the terms and conditions of employment, Defendants provide

---

[9] Defendant UF ignores Plaintiff Claire's allegations that even though they offer alternative plans to other employees that do not contain the exclusion, they chose not to provide non-discriminatory coverage to Plaintiff Claire. (ECF 34, at 27-28 ¶¶ 107-111; 51-52 ¶¶ 229-30).

discriminatory health insurance plans that deprive Plaintiffs of medically necessary healthcare because they are transgender. (*Id.*)

These allegations sufficiently establish the necessary conditions for enjoining Defendants, Plaintiffs' employers, in their official capacities. *See Luckey*, 860 F.2d at 1015-16; *cf. Madera v. Detzner*, 325 F. Supp. 3d 1269, 1277 (N.D. Fla. 2018) (Secretary of State bears sufficient connection to voting rights violations because of the Secretary's power and supervisory and administrative responsibilities over election laws); *Brenner v. Scott*, 999 F. Supp. 2d 1278, 1285-86 (N.D. Fla. 2014) (Secretary of Department of Management Services and Surgeon General were proper parties for refusing to recognize same-sex marriages). Plaintiffs seek access to future conditions of employment that do not violate the Equal Protection Clause. *Cf. Glenn v. Brumby*, 663 F.3d 1312 (11th Cir. 2011).

Accordingly, Defendants' motion should be denied.

## III.   Conclusion

Defendants have subjected Plaintiffs to sex discrimination under Title VII and the Equal Protection Clause by providing them facially discriminatory employer-sponsored health insurance plans that treat transgender individuals differently on the basis of sex. Defendants, as Plaintiffs employing agencies, are the proper parties against whom Plaintiffs can seek, and this

Court can order, relief. Plaintiffs have demonstrated Article III standing to challenge the employment discrimination by Defendants in violation of Title VII and the Equal Protection Clause, and sovereign immunity does not bar Plaintiffs' Equal Protection Claims. For the foregoing reasons, Plaintiffs request that this Court deny Defendants' motions to dismiss Counts II, III, IV, VI, VII, and VIII of Plaintiffs' Amended Complaint.

## <u>CERTIFICATE OF WORD COUNT</u>

Pursuant to N.D. Fla. Loc. R. 7.1(F), the above Response contains 4,547 words.

Dated: June 26, 2020          Respectfully submitted,

*/s/ Simone Chriss*

SIMONE CHRISS, Fla. Bar No. 124062
simone.chriss@southernlegal.org
KIRSTEN ANDERSON, Fla. Bar No. 17179
kirsten.anderson@southernlegal.org
JODI SIEGEL, Fla. Bar No. 511617
jodi.siegel@southernlegal.org
Southern Legal Counsel, Inc.
1229 NW 12th Avenue
Gainesville, FL 32601
(352) 271-8890

DANIEL TILLEY, Fla. Bar No. 102882
dtilley@aclufl.org
ACLU Foundation of Florida

4343 West Flagler Street, Suite 400,
Miami, FL 33134
(786) 363-2714

ANTON MARINO, Fla. Bar. No. 1021406
amarino@aclufl.org
ACLU Foundation of Florida
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-2707

ERIC LINDSTROM, Fla. Bar No. 104778
elindstrom@eganlev.com
Egan, Lev, Lindstrom & Siwica, P.A.
P.O. Box 5276
Gainesville, FL 32627
(352) 672-6901

**ATTORNEYS FOR ALL PLAINTIFFS**

JEFFREY HEARNE, Fla. Bar No. 512060
jhearne@legalservicesmiami.org
JOCELYN ARMAND, Fla. Bar No.44264
jarmand@legalservicesmiami.org
MIRIAM HASKELL, Fla. Bar No. 69033
mhaskell@legalservicesmiami.org
PAMELA FLORES, Fla. Bar No. 0124363
pflores@legalservicesmiami.org
Legal Services of Greater Miami, Inc.
4343 West Flagler Street, Suite 100
Miami, FL 33134
(305) 438-2403

**ATTORNEYS FOR PLAINTIFF MURPHY**