IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JAMI CLAIRE, et al.,

    *Plaintiffs*,

v.                                                  Case No.: 4:20cv20-MW/MAF

FLORIDA DEPARTMENT OF
MANAGEMENT SERVICES, et al.,

    *Defendants*.

_____/

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

This Court has considered, without hearing, the parties' cross-motions for summary judgment, ECF Nos. 123, 125, & 126. Plaintiffs bring claims under Title VII and the Equal Protection Clause of the Fourteenth Amendment, alleging that Defendants have unlawfully discriminated against them on the basis of sex by denying health insurance coverage for gender-affirming medical care. The cross-motions have been pending for over three years, and in that time, the law in this Circuit has developed with respect to discrimination claims brought by transgender individuals. This Court ordered the parties to file supplemental briefing on the development of the law as applied to Plaintiffs' claims and the pending motions for summary judgment. ECF Nos. 158, 164, and 167. The parties have filed their

supplemental briefs, responses, and replies, and this Court has considered, without hearing, the summary-judgment arguments as supplemented by the parties.

Before this Court dives into its substantive analysis, this Court must address a few threshold matters. To start, Plaintiffs assert that Ms. Claire and Mr. Murphy are no longer employed by the State of Florida. As a result, their Equal Protection claims seeking prospective injunctive relief are due to be dismissed for lack of standing.

Next, this Court considers Ms. Lane's standing. Without dispute, she remains employed by the State of Florida, and thus, subject to the allegedly unconstitutional health care coverage exclusions. Ms. Lane's asserted injury-in-fact is that she was denied coverage and continues to be denied coverage for facial feminization surgery based on the challenged coverage exclusion for gender reassignment or modification services and supplies. However, without dispute, after Ms. Lane appealed the denial of her prior-authorization request for facial feminization surgery, the appeal panel denied coverage under both the challenged coverage exclusion and the plan's cosmetic procedure exclusion. *See* ECF No. 118-3 at 63–64. But Ms. Lane is not challenging the state plan's cosmetic procedure exclusion. *See* ECF No. 34 ¶¶ 223, 263 (amended complaint challenging only state plan exclusion for "gender reassignment or modification services or supplies"). Thus, this Court could not order injunctive relief that would redress Ms. Lane's injury, as her desired medical

2

procedure would continue to be excluded from coverage under the unchallenged cosmetic procedures exclusion. Due to this failure to demonstrate redressability as to prospective injunctive relief, Ms. Lane's Equal Protection claim against Defendant Allende is also due to be dismissed.[1]

Accordingly, because Plaintiffs lack standing to pursue their Equal Protection claim for prospective injunctive relief, Count V of the amended complaint is **DISMISSED**. Plaintiffs' motion for partial summary judgment, ECF No. 123, is due to be denied in part with respect to their Equal Protection claim. Defendant Allende's motion for summary judgment, ECF No. 125, is due to be denied as moot.

Having concluded that Plaintiffs lack standing to proceed with their Equal Protection claim, this Court limits its discussion to Count I, Plaintiffs' Title VII claim against Defendant Department of Management Services (DMS),[2] and Defendant DMS's cross-motion for summary judgment as to the Title VII claim.

---

[1] Although nobody uses the term in their briefing, Defendant DMS appears to have raised the "same decision" defense with respect to Ms. Lane's claim. If successful, a "same decision" defense "serves as a complete bar to liability in the § 1983 context." *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1244 (11th Cir. 2016). With respect to Title VII, a successful "same decision" defense does not preclude a Title VII plaintiff from other forms of redress, including attorneys' fees and declaratory relief. *See id.*, 814 F.3d at 1242–43. Here, given the unclear record with respect to any "same decision" defense and Defendant DMS's failure to brief this issue, questions of fact remain as to whether Ms. Lane is precluded from obtaining damages under Title VII. Accordingly, as set out at the end of this Order, the parties must be prepared to discuss how they intend to proceed with presenting Ms. Lane's Title VII claim and any affirmative defenses with respect to her Title VII claim at trial.

[2] Even if Plaintiffs had standing to pursue their Equal Protection challenge, this Court agrees with Plaintiffs that this case should be decided on Title VII grounds pursuant to the "fundamental and longstanding principle of judicial restraint" that "requires that courts avoid

3

Finally, Defendants move to exclude the testimony of Plaintiffs' expert, Dr. Anna Kirkland. ECF No. 124. Plaintiffs' reliance upon Dr. Kirkland's testimony is limited to a single citation to a short excerpt from Dr. Kirkland's deposition. *See* ECF No. 123 at 12. However, in reviewing the pending motions for summary judgment and the development in the law since the parties filed their motions for summary judgment, this Court concludes that the testimony at issue is not material to this Court's analysis in ruling on the pending motions for summary judgment. Inasmuch as the testimony is not material, this Court did not consider it in ruling on the pending motions. Accordingly, Defendants' motion, ECF No. 124, is **DENIED as moot.** Defendants, of course, may renew their motion in limine to exclude the testimony ahead of any trial on damages.

This Court now turns to the pending motions for summary judgment with respect to Count I, Plaintiffs' Title VII claim.

I

Summary judgment is appropriately granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

---

reaching constitutional questions in advance of the necessity of deciding them." *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988).

4

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where material facts are not in dispute, this Court may "resolve purely legal questions" at this stage. *Rodriguez v. Procter & Gamble Co.*, 465 F. Supp. 3d 1301, 1314 (S.D. Fla. 2020) (citation omitted). On cross-motions, that standard remains the same. This Court evaluates the cross-motions separately, viewing the evidence in the light most favorable to the non-movant.

II

This Court begins with the undisputed facts. Defendant DMS is responsible for implementing and administering the state group insurance program, which provides health insurance benefits to eligible state employees. § 110.123(5), Fla. Stat.; § 110.123(3)(b), Fla. Stat. ("It is the intent of the Legislature to offer a comprehensive package of health insurance and retirement benefits and a personnel system for state employees which are provided in a cost-efficient and prudent manner, and to allow state employees the option to choose benefit plans which best suit their individual needs."). "To implement this program, [DMS] shall, with prior approval by the Legislature determine the benefits to be provided and the contributions to be required for the state group insurance program." *Id*. § 110.123(5)(a). DMS is "responsible for all aspects of the purchase of health care for state employees under the state group health insurance plan or plans, TRICARE supplemental insurance plans, and the health maintenance organization plans." *Id*. §

5

110.123(3)(c). These responsibilities include "the development of requests for proposals or invitations to negotiate for state employee health benefits, the determination of health care benefits to be provided, and the negotiation of contracts for health care and health care administrative services." *Id*.

As early as the 1970s, the state group insurance program excluded coverage for "charges for surgical procedures for gender reassignment." *See* ECF No. 121-7 at 10. In 2016, DMS issued an invitation to negotiate (ITN) that solicited private health maintenance organizations to offer contracts to administer state health plans. ECF No. 122-21 at 5. In addition to other excluded treatment, the ITN specifically excluded "gender reassignment or modification services and supplies" from the array of covered benefits otherwise provided under the state health plan. *Id*. at 137. Neither the ITN, which included the exclusion at issue, nor the resulting contracts following the procurement process, need to be approved by the Florida Legislature. ECF No. 118-9 at 59. DMS issued a separate ITN for preferred provider organizations ("PPOs"), but the coverages and benefits were the same. *Id*. at 65. DMS manages the resulting contracts and pays the participating insurance companies for claims out of its operating budget, which "all comes out of the trust fund . . . that premium contributions are put into." *Id*. at 59-60.

Ryan Stokes, bureau chief of Financial and Fiscal Management for the Division of State Group Insurance, within DMS, testified that DMS does not

6

determine which benefits are covered, but instead it "implement[s] the benefits that the legislature directs [DMS] to implement." ECF No. 118-9 at 11. In addition, DMS does not "advocate for specific benefits to [the] program," rather it "allow[s] the legislature to direct [DMS] either through the statute or the General Appropriations Act as to which benefits [DMS is] going to offer." *Id*. at 12. While not "mandated" to propose changes in benefits to the legislature, DMS "could" do so. *Id*.

DMS may make its own "clarifications" to its benefit documents "based on federal law or new state law." *Id*. at 14. In addition, if a change was needed to comply with a change in federal law, DMS "would notify legislative staff . . . [DMS's] general counsel office, [and DMS's] legislative affairs office, so that that could be taken to the legislature and they could make the appropriate changes as needed in the statute or the General Appropriations Act in order to be compliant." *Id*.

With respect to the current exclusion of coverage for "gender reassignment and modification services and supplies," Mr. Stokes testified that he does not know why it was originally part of the state plan. *Id*. at 19. To the best of his knowledge, "those exclusions have always been there." *Id*. Originally, "those services were deemed experimental and investigational," but Mr. Stokes does not know if that is still the reason they are excluded. ECF No. 118-9 at 20. Instead, according to Mr. Stokes, there is no known present-day reason for the exclusion except that "it's in the statute as an exclusion," and DMS "only [does] what the legislature directs [it]

7

to implement." *Id*. at 21. When pressed on which statute he was referring to, Mr. Stokes admitted that "[m]aybe it's in the plan document. I am sorry. I could have it backwards . . . [i]t was a general—our understanding is—and again, this predates any of us that are here. But it's our understanding that in the '70s and prior to that, that most health plans did not cover it because it was experimental and investigational at that time." *Id*. at 22.

When the parties filed their cross-motions for summary judgment, Tami Fillyaw was the chief of staff for DMS and previously served as the deputy secretary. She was division director of State Group Insurance within DMS from January 2016 through March 2019. ECF No. 118-13 at 13-14. To her knowledge, there is no medical or financial reason for the "gender reassignment" exclusion. *Id*. at 98. Instead, Ms. Fillyaw testified that the exclusion "has been on the books for some time," and "[t]here was not a reason for [her] to ask why there was such an exclusion." *Id*.

The Plaintiffs are or were state employees who receive health insurance from the state as an employee benefit. Jami Lynn Claire is a Navy veteran and a former long-time employee at the University of Florida. ECF No. 181-5 at 10:22-11:24, 13:20-14:22. At the start of this case, Ms. Claire worked for the University of Florida and had received state health plan benefits since 1987.

8

Kathryn Lane is a lawyer with the Public Defender's Office of the Second Judicial Circuit who has practiced criminal law in Florida since she earned her law degree from the University of Florida in 2006. ECF No. 181-9 at 11:9-13:14.

Ahmir Murphy has worked in corrections and law enforcement in Florida since 2009. ECF No. 118-23 at 9:14-15:25. At the start of this case, Mr. Murphy worked as a corrections officer for the Department of Corrections, having been promoted to sergeant around 2019. *Id*. at 15:14-15:25. Both Ms. Claire and Mr. Murphy left their employment with the State of Florida after the parties filed their cross-motions for summary judgment.

Ms. Claire and Ms. Lane are transgender women. They both were assigned the male sex at birth, but each has an internal identity as female. Both Ms. Claire and Ms. Lane have lived outwardly as women for many years, although their internal identity as women originated long before they transitioned. Mr. Murphy is a transgender man, meaning he was assigned the female sex at birth, but his internal identity is male. Mr. Murphy began hormone replacement therapy in 2017, but he transitioned and began living as a man "way before [he] actually started hormone replacement therapy." ECF No. 118-23 at 17:22-25.

Each of the Plaintiffs are diagnosed with gender dysphoria. Gender dysphoria is recognized in the DSM-V, which provides the following criteria for diagnosis; namely, it may be diagnosed based on the experience of "[a] marked incongruence

9

between one's experienced/expressed gender and assigned gender, of at least 6 months' duration," as manifested by at least two of many possible symptoms. ECF No. 122-1. These symptoms may include "[a] marked incongruence between one's experienced/expressed gender and primary and/or secondary sex characteristics," and "[a] strong desire to be rid of one's primary and/or secondary sex characteristics because of a marked incongruence with one's experienced/expressed gender." *Id*. at 1-2.

"Gender-affirming care," including the procedures that Plaintiffs seek in this case, is recognized by the World Professional Association for Transgender Health ("WPATH") as medically necessary for the treatment of gender dysphoria. *See* ECF No. 122-3. The WPATH standards of care note that "[f]or individuals seeking care for gender dysphoria, a variety of therapeutic options can be considered," including changes in gender expression and role, psychotherapy, hormone therapy, and surgery. *Id*. at 15-16. Ultimately, though, deciding which treatments are medically necessary is an individualized determination. *Id*. at 11.

In 2018, while she was employed by the University of Florida, Ms. Claire's healthcare provider submitted a pre-authorization request for a bilateral orchiectomy to treat her gender dysphoria. *See* ECF No. 122-8. Her request was denied because the treatment was not a covered benefit under her health insurance plan. ECF No. 122-11. In 2018, Ms. Lane sought facial feminization surgery to treat her gender

10

dysphoria, but her insurer denied coverage for the procedures based on the state health plan's exclusions for gender reassignment surgery and cosmetic surgery. *See* ECF Nos. 122-14, 122-15 (original denial only for gender reassignment exclusion), 122-18 (denial on appeal based on gender reassignment exclusion and cosmetic surgery exclusion). And during his employment with the Florida Department of Corrections, Mr. Murphy's healthcare providers submitted a request for prior authorization to his health insurance provider for a double mastectomy to treat his gender dysphoria. ECF No. 122-6. But Mr. Murphy was also denied coverage based on the gender reassignment exclusion under the state health insurance plan. ECF No. 122-7.

III

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex[.]" 42 U.S.C. §2000e-2(a)(1). As to employee health and pension benefits, the Eleventh Circuit has made clear that "[t]he existence and extent of such benefits bear directly on employment opportunity." *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1389 (11th Cir. 1998). "Because health and pension benefits frequently represent a crucial component of an employee's compensation, the practical effect of denying or

reducing such benefits on the basis of sex is to deny the employee an 'employment opportunity' on the basis of sex." *Id.*

"Title VII prohibits *all forms* of discrimination because of sex, however they manifest themselves or whatever other labels might attach to them." *Bostock v. Clayton Cnty, Ga.*, 590 U.S. 644, 670 (2020). Accordingly, "discrimination based on homosexuality or transgender status necessarily entails discrimination based on sex; the first cannot happen without the second." *Id.*[3]

"Where an employer's policy or practice discriminates against a protected characteristic, no further proof of disparate intent is needed." *Lange v. Houston Cnty., Ga.*, 101 F.4th 793, 798 (11th Cir. 2024). Moreover, "[t]he absence of a malevolent motive does not convert a facially discriminatory policy into a neutral policy with a discriminatory effect." *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 199 (1991)). If Defendant's policy "involves disparate treatment through explicit facial discrimination," it may therefore "be defended only as a [bona fide occupational

---

[3] The law also recognizes "[g]ender stereotype discrimination. . . [as] a cognizable form of sex discrimination." *Winstead v. Lafayette Cnty. Bd. of Cnty. Commissioners*, 197 F. Supp. 3d 1334, 1345 (N.D. Fla. 2016) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989) (plurality opinion) ("We are beyond the day when an employer could evaluate employees by assuming or insisting that they matched the stereotype associated with their group.")).

qualification]." *Id*. at 199-200. Here, Defendant DMS offers no argument that the challenged exclusion of coverage is a bona fide occupational qualification.

Relying on *Bostock*, the Eleventh Circuit in *Lange* recently held, in a factually analogous case, that an exclusion for employer-provided health care benefits consisting of a "blanket denial of coverage for gender-affirming surgery . . . unlawfully discriminates against . . . transgender persons," in violation of Title VII. *Id*., 101 F.4th at 798–99. This is true even if the employee is "able to secure other transition-related care under" the employer-provided health plan, because "[a]n employer is not shielded from liability when it engages in discriminatory practices concerning some treatment and not others." *Id*. at 799. In other words, "[e]ach instance of discrimination presents an independent violation." *Id*. (citing *Bostock*, 590 U.S. at 662). As the district court in *Lange* succinctly put it, "Title VII does not exempt 'partial' violations." *Lange v. Houston Cnty., Ga.*, 608 F. Supp. 3d 1340, 1360 (M.D. Ga. 2022) (citing 42 U.S.C. § 2000e-2(a)(1)).

Plaintiffs assert in their supplemental briefing that *Lange* is directly on point and binding on this Court. ECF No. 170 at 3–6. Defendants agree that *Lange* is "presently controlling" with respect to Plaintiffs' Title VII claim, but Defendants ask this Court to withhold ruling on the Title VII claim until the mandate in *Lange* is issued. ECF No. 171 at 6–7. Defendants also argue that *Lange* was wrongly decided. *Id*. But, as Plaintiffs correctly point out, *Lange* is binding regardless of whether the

13

mandate has issued. ECF No. 173 at 10 (citing *Martin v. Singletary*, 956 F. 2d 944, 945 n.1 (11th Cir. 1992) and *Poblano v. Russell Cellular Inc.*, 543 F. Supp. 3d 1293, 1295 (M.D. Fla. 2021)).

Accordingly, this Court is bound to follow *Lange* and rejects Defendants' request to withhold ruling on Plaintiffs' Title VII claim until the mandate issues in that case. Here, the undisputed facts demonstrate that the challenged exclusions apply only to transgender members, as only transgender individuals would seek the gender-affirming treatment that is excluded from coverage. *See Lange*, 101 F. 4th at 799 ("Health Plan participants who are transgender are the only plan participants who would seek gender-affirming surgery."). Here, Plaintiffs are seeking gender-affirming treatment for their gender dysphoria, therefore the challenged exclusions apply to them because they are transgender. Defendant DMS admits that the challenged exclusion "prohibits coverage" of hormone replacement therapy, double mastectomy, orchiectomy, and any other form of surgical treatment to treat gender dysphoria. *See* ECF No. 122-4 at 14. But coverage is provided for mastectomies, orchiectomies, and certain cosmetic procedures if necessary to treat other qualifying conditions. *See* ECF No. 118-2 at 39–40. According to *Lange*, this amounts to a facially discriminatory employer action under Title VII. *See Lange*, 101 F. 4th at 799 ("The Exclusion is a facially discriminatory policy, and its harmful effects are not mitigated by the existence of other nondiscriminatory policies. We therefore

affirm the district court's finding that the Exclusion is facially discriminatory in violation of Title VII."); *Lange*, 608 F. Supp. 3d at 1356–57.

As the Eleventh Circuit has held, "drawing a line between gender-affirming surgery and other operations, . . . intentionally carves out an exclusion based on one's transgender status." *Lange*, 101 F.4th at 799. But an individual's "transgender status is not relevant to employment decisions." *Bostock*, 590 U.S. at 660. Instead, discrimination on this basis "requires an employer to intentionally treat individual employees differently because of their sex." *Id.* at 661. For this reason, the exclusion of state plan health insurance coverage for gender reassignment or modification services and supplies violates Title VII as a facially discriminatory policy.

DMS, as the agency responsible for implementing and administering the state group insurance plan for state workers, is liable for the Title VII violation, as DMS constitutes an "employer" under Title VII. Indeed, DMS does not dispute its employer status in either its motion for summary judgment, ECF No. 126, or its response in opposition to Plaintiffs' motion, ECF No. 135. This is for good reason, as the law makes plain that an entity that has the power to exercise duties traditionally reserved to the employer—in this case, implementing and administering employee health benefits—and does, in fact, utilize those powers, is liable as an agent of the employer for purposes of Title VII. *See Williams v. City of Montgomery*, 742 F.2d 586, 589 (11th Cir. 1984); *see also Lange*, 101 F.4th at 800

15

(holding Houston County liable under Title VII for discriminatory health insurance plan when Houston County administered plan on behalf of Sheriff's Office).

Accordingly, for the reasons set out above and pursuant to binding Eleventh Circuit authority, this Court concludes that there is no dispute of material fact with respect to Defendant DMS's liability under Title VII based on its administration of the facially discriminatory state group insurance plan and challenged exclusion for gender reassignment or modification services and supplies. Plaintiffs are entitled to partial summary judgment on their Title VII claim against DMS as to liability.

**IT IS ORDERED:**

1. Plaintiffs' motion for partial summary judgment, ECF No. 123, is **GRANTED in part** and **DENIED in part.** The motion is **GRANTED** as to Defendant DMS's liability under Title VII. The motion is **DENIED** as to Plaintiffs' Equal Protection claim because Plaintiffs lack standing.

2. Plaintiffs' remaining Equal Protection claim, Count V, is **DISMISSED for lack of standing.**

3. As for Defendant DMS's motion for summary judgment, Defendant has failed to demonstrate that the challenged exclusion is not facially discriminatory as a matter of law in light of *Lange*. Defendant DMS's motion, ECF No. 126, is **DENIED**.

4.  Defendant Allende's motion for summary judgment as to Plaintiffs' Equal Protection claim, ECF No. 125, is **DENIED as moot.**

5.  Defendants' motion to exclude the testimony of Dr. Kirkland, ECF No. 124, is **DENIED as moot.**

6.  The question remains as to Plaintiffs' remedies for the Title VII violations. The Clerk shall set this matter for a telephonic status conference on August 16, 2024, at which time the parties must be prepared to discuss how they intend to proceed with respect to proving damages or any affirmative defenses that would limit Plaintiffs' damages at trial.

**SO ORDERED on August 1, 2024.**

                                               **s/Mark E. Walker**  
                                               **Chief United States District Judge**