**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

JAMI CLAIRE et al.,

      Plaintiffs,

vs.                           Case No. 4:20-cv-00020-MW/MAF

FLORIDA DEPARTMENT OF
MANAGEMENT SERVICES et al.,

      Defendants.

_____/

**PLAINTIFFS' RESPONSE TO COURT'S ORDER**
**FOR SUPPLEMENTAL BRIEFING**

In its August 1, 2024, Order, this Court held that Plaintiffs established as a matter of law that the State Plan Exclusions are facially discriminatory in violation of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.* ("Title VII"). The Court granted Plaintiffs' motion for partial summary judgment and found Defendant DMS liable under Title VII after concluding that "the exclusion of state plan health insurance coverage for gender reassignment or modification services and supplies violates Title VII as a facially discriminatory policy." (ECF 177, at 15.) This Court also set forth the remaining question "as to Plaintiffs' remedies for the Title VII violations." (*Id.* at 17.)

Following a telephonic scheduling conference on August 16, 2024, this Court issued an Order for Briefing Schedule for supplemental briefing by the parties "regarding available relief and the effect the Eleventh Circuit's decision to vacate the *Lange* decision pending rehearing en banc has on Plaintiffs' claims moving forward." (ECF 179).

The purpose of Title VII is "to make persons whole for injuries suffered on account of unlawful employment discrimination." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975); *U.S. E.E.O.C. v. Massey Yardley Chrysler Plymouth, Inc*., 117 F.3d 1244, 1251 (11th Cir. 1997); *see also Smith v. Bd. of Trustees of Univ. of Fla.*, No. 1:04-CV-106, 2007 WL 1526844, at *1 (N.D. Fla. May 24, 2007) (once discrimination has been proven, presumption arises that plaintiff is entitled to all appropriate remedies; purpose of remedies is to "provide make-whole relief for past discrimination and to deter discriminatory actions in the future") (internal citations omitted). A wide range of remedies is available to victims of Title VII discrimination through the statutes enacted by Congress in furtherance of this goal. *See* 42 U.S.C. § 2000e-5(g) (authorizing equitable relief); 42 U.S.C. § 1981a (authorizing compensatory and punitive damages).

Plaintiffs have been discriminated against under Title VII, and as set forth below, seek to be made whole through permanent injunctive relief,

declaratory relief, reimbursement for out-of-pocket expenses resulting from the discriminatory denial of necessary medical care, and attorneys' fees and costs. As outlined below, this Court can enter the requested relief based on the summary judgment record. Plaintiffs also seek to be made whole by an award of compensatory damages in an amount to be determined at trial.

I.   **Plaintiffs Request This Court Issue Permanent Injunctive Relief, Declaratory Relief, and Award Damages for the Title VII Violations**

   A. **Plaintiffs Are Entitled to Permanent Injunctive Relief to Prevent Defendant from Continuing to Enforce the Discriminatory Exclusions**

As requested in their Amended Complaint (ECF 34, at 62), and as argued in their Motion for Summary Judgment (ECF 123, at 47-49), Plaintiffs request that this Court grant permanent injunctive relief under Title VII to prevent Defendant from continuing to enforce the discriminatory State Plan Exclusions.

Title VII authorizes courts to grant broad injunctive relief to prevent future unlawful employment practices as required by the specific circumstance of the case. 42 U.S.C. § 2000e-5(g)(1); *Int'l. Bhd. Of Teamsters v. U.S.*, 431 U.S. 324, 364–65 (1977); *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 763-64 (1976). This Circuit has held that, in Title VII cases, "injunctive relief may benefit individuals not party to the action, and that classwide injunctive relief may be appropriate in an individual action."

*Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1136 (11th Cir. 1984); *see also Hutchings v. U.S. Indus., Inc.,* 428 F.2d 303, 311 (5th Cir. 1970) ("The trial judge in a Title VII case bears a special responsibility in the public interest to resolve the employment dispute, for once the judicial machinery has been set in train, the proceeding takes on a public character in which remedies are devised to vindicate the policies of the Act, not merely to afford private relief to the employee.").

In this case, the Court held that the State Plan Exclusions ("Exclusions") discriminate against Plaintiffs on the basis of sex in violation of Title VII and granted Plaintiffs' motion for summary judgment on their Title VII claims. (ECF 177, at 14-16.) Defendant has clearly demonstrated its intent to maintain the Exclusions and to continue discriminating against transgender employees. (*See* ECF 173, at 14-17) (detailing record evidence demonstrating that Defendants have willfully chosen to keep the Exclusions in the plans, despite being made aware that they may constitute impermissible sex discrimination by their third-party administrators and through this litigation; ECF 123, at 27-29; ECF 136, at 24-25).

Indeed, the Florida Legislature has further entrenched this discrimination through the 2023 enactment of Fla. Stat. § 286.311, a law that prohibits the use of state funds, including by a state group health insurance

program, for "sex-reassignment prescriptions or procedures." *See* Fla. Stat. § 286.311(2); *see also* ECF 170, at 19-21. DMS is intentionally engaging in enforcing the discriminatory Exclusions, which is an unlawful employment practice. *See* 42 U.S.C. § 2000e-5(g)(1).

Defendant's liability has been established (ECF 177, at 14-16), and injunctive relief is necessary to vindicate the policies of Title VII. *See Hutchings*, 428 F. 2d. at 311. While a court generally has discretion to grant injunctive relief, "this discretion has been severely limited in cases involving ongoing discrimination. In such instances, this court has stated that 'injunctive relief is *mandatory* absent clear and convincing proof that there is no reasonable probability of further noncompliance with the law.'" *In re Nat'l Airlines, Inc.*, 700 F.2d 695, 697 (11th Cir. 1983) (quoting *N.A.A.C.P. v. City of Evergreen*, *Ala.,* 693 F.2d 1367, 1370 (11th Cir.1982)).[1] In fact, in Title VII

---

[1] This Court's summary judgment order details undisputed facts supporting this conclusion, as DMS has the authority to – but has chosen not to – make clarifications to its benefit documents based on federal law and to ask the legislature to "make the appropriate changes" to the State Plan benefits documents to comply with federal law. (ECF 177, at 7.) Despite being made aware as early as 2016 that the Exclusions may conflict with federal law (ECF 173 at 14-15), and despite being made aware, as early as January 2020, that the Exclusions were causing real and significant harm to transgender state employees like Plaintiffs Claire, Lane, and Murphy (ECF 1; ECF 34), and despite DMS denouncing knowledge of any known justification for the Exclusions (ECF 177, at 7-8), Defendants continue to justify and enforce the discriminatory Exclusions. In Title VII cases, the

cases, "district courts have not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future." *Teamsters*, 431 U.S. at 364-65 (citing *Albemarle*, 422 U.S. at 421, 418). Indeed, "[t]he issuance of a permanent injunction upon a finding of past violations of Title VII is mandatory." *Harmond v. Cavazos*, No. 1:89-CV-2030-ODE, 1991 WL 130848, at *1 (N.D. Ga. Apr. 29, 1991); *see also N.A.A.C.P.,* 693 F.2d at 1370. In this case, the Court found that the Exclusions violate Title VII, and accordingly, a permanent injunction precluding Defendant from further enforcement of the discriminatory Exclusions is a necessary and appropriate remedy.[2]

The scope of an injunction is not limited to imminent repetition of the exact circumstances proven to establish liability; instead, an injunction is proper if "the employer's discriminatory conduct could possibly persist in the future." *Bruso v. United Airlines Inc.*, 239 F.3d 848, 864 (7th Cir.

_____

burden is on the Defendant to "prove that the violation is unlikely to recur." *E.E.O.C. v. Massey,* 117 F. 3d. at 1254. It is undisputable that Defendant has not carried its burden, and there is no "clear and convincing proof" that Florida will comply with its Title VII obligations.

[2] As set forth in the prayer for relief in Plaintiffs' Amended Complaint (ECF 34), Plaintiffs sought permanent injunctive relief to cease enforcement of the Exclusions, and permanent injunctive relief to prohibit DMS from "soliciting and accepting bids and granting contracts for health insurance plans that contain an exclusion of coverage for gender-affirming care." (ECF 34, at 62.)

2001); *accord Hudson v. Chertoff*, 484 F. Supp. 2d 1268, 1272 (S.D. Fla. 2007) (following *Bruso*). Here, even if Plaintiff Lane were able to obtain the gender-affirming procedure sought in this action using her own funds, or if a jury were to award no damages to Ms. Lane for her specific denial of coverage, so long as she remains a state-employee and subject to the Exclusions, further denials of gender-affirming care of any sort "could possibly persist in the future." *Id.*[3] Therefore, this Court must enjoin future application of the Exclusions to protect Ms. Lane as well as other transgender state employees.

Further, the scope of the injunction is not limited to the plaintiffs in this case. Eleventh Circuit precedent allows district courts to grant such relief to "benefit *individuals not party to the action*, and that classwide injunctive relief may be appropriate in an individual action." *Carmichael*, 738 F.2d at 1136 (emphasis added); *see also Meyer v. Brown & Root Const. Co.*, 661 F.2d 369, 373 (5th Cir. 1981) (explaining the "essential nature of Title VII suits" - where "[a]n individual who brings a Title VII suit 'takes on the mantel of the sovereign,'" as [t]he clear purposes of Title VII are to eliminate discrimination and recompense those who have suffered from it.") (internal citations

---

[3] ECF 118-9, Lane, at 58:15-59:12 (detailing additional gender-affirming procedures Plaintiff Lane may need or seek in the future that would be categorically excluded under the State Plan Exclusions).

omitted).) Additionally, "[t]he vindication of constitutional rights and the enforcement of a federal statute serve the public interest almost by definition." *League of Women Voters of Fla. v. Browning*, 863 F. Supp. 2d 1155, 1167 (N.D. Fla. 2012). Since injunctions for Title VII violations take on a public benefit to prevent future discriminatory acts, *Rau v. Apple-Rio Mgmt. Co.*, 85 F. Supp. 2d 1344, 1352 (N.D. Ga. 1999), *aff'd*, 251 F.3d 161 (11th Cir. 2001), it further benefits the public to ensure that no other state employee receives health insurance that discriminates based on sex.

Permanent injunctive relief should be granted pursuant to this Court's "broad authority and discretion to order equitable remedies for unlawful employment action" *Smith,* 2007 WL 1526844, at *1, and this Court's duty to "render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future." *Kilgo v. Bowman Transp., Inc.,* 789 F.2d 859, 880 (11th Cir.1986).

Additionally, while Plaintiffs maintain that a "same decision" defense does not apply and has no bearing on the outcome of this case (*see Infra* § I(D)), even if the Court did find that Defendant had succeeded with such a defense, the defense does not preclude a Title VII plaintiff from other forms of redress, including injunctive relief. 42 U.S.C. § 2000e-5(g)(2)(B); *Chavez v. Credit Nation Auto Sales, LLC*, 641 F. App'x 883, 889 (11th Cir. 2016)

(where plaintiff proves violation of Title VII, and defendant employer proves that it would have taken the same employment action in the absence of the illegal motivating factor, court may grant declaratory or injunctive relief and attorney's fees and costs, but shall not award damages or order reinstatement).

For the reasons set forth above, Plaintiffs are entitled to a permanent injunction prohibiting Defendant or its agents from enforcing the Exclusions to deny medically necessary gender-affirming care for the treatment of gender dysphoria to state of Florida employees, including but not limited to Ms. Lane. The court may enter permanent injunctive relief at this time based upon the undisputed facts supporting Plaintiffs' motion for summary judgment.

### B. Plaintiffs Are Entitled to a Declaratory Judgment

Plaintiffs are entitled to a declaration of their rights pursuant to 28 U.S.C. § 2201. *Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007). In fact, a court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *Rau,* 85 F. Supp. 2d at 1352 (*quoting* 28 U.S.C. § 2201)*; see also* Fed. R. Civ. P. 57.

Plaintiffs request that this Court enter a declaration that Defendant's policy of categorically excluding all medically necessary gender-affirming care in the State Plans violates Title VII of the Civil Rights Act.[4]

Additionally, while Plaintiffs maintain that a "same decision" defense does not apply and has no bearing on the outcome of this case (*see Infra* § I(D)), even if the Court did find that Defendant had succeeded with such a defense, the defense does not preclude a Title VII plaintiff from other forms of redress, including declaratory relief, injunctive relief, and attorneys' fees. *See Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1242-44 (11th Cir. 2016); *Chavez*, 641 F. App'x at 889; *see also* ECF 177, at 3 n.1. Like the permanent injunctive relief, the Court may enter declaratory relief based on the undisputed facts in the summary judgment record.

### C. Plaintiffs Are Entitled to Damages

#### *(1) Compensatory Damages*

As set forth in this Court's Order, the Exclusions constitute a "facially discriminatory employer action under Title VII." (ECF 177, at 14.) Defendant

---

[4] As set forth in the prayer for relief in the Amended Complaint, Plaintiffs sought a declaration that Defendants are in violation of Title VII. (ECF 34, at 62; *see also* ECF 123 at 3 (Plaintiffs respectfully request that this Court enter "a declaration that Defendant's policy of categorically excluding medically necessary gender-affirming care in the State Plans violates Title VII of the Civil Rights Act of 1964").

unlawfully discriminated against Plaintiffs on the basis of sex by denying health insurance coverage for their gender-affirming medical care, and Defendant was held to be "liable for the Title VII violation" based on its "administration of the facially discriminatory state group insurance plan and challenged exclusion[.]" (*Id.* at 15-16.)

As such, Plaintiffs are entitled to recover compensatory damages for the garden variety mental and emotional suffering that they experienced as a result of the discriminatory Exclusions and will present evidence of these damages at trial. Compensatory damages are authorized under 42 U.S.C. § 1981a(a)(1), which allow a prevailing plaintiff to be awarded compensatory damages for "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." *Id.* § 1981a(b)(3). Plaintiffs may be compensated for "intangible, psychological injuries" including emotional harm, humiliation, insult, and emotional distress. *See Ferrill v. The Parker Grp., Inc.*, 168 F.3d 468, 476 (11th Cir. 1999); *Stallworth v. Shuler*, 777 F.2d 1431, 1435 (11th Cir. 1985). Compensatory damages are capped under 42 U.S.C. § 1981a(b)(3), which requires, in the case of an employer who has more than

500 employees (such as Defendant DMS[5]), the damages award shall not exceed $300,000 for each plaintiff. 42 U.S.C. § 1981a(b)(3)(D).

To recover compensatory damages for emotional distress, plaintiffs must prove actual injury, but "[t]he injury in civil rights cases may be intangible" and "need not be financial or physical but may include damages for humiliation and emotional distress." *Stallworth*, 777 F.2d at 1435, *citing Carey v. Piphus*, 435 U.S. 247, 263-64 & n.20 (1978). Further, damages for emotional distress "need not be proven with a high degree of specificity" and "may be inferred from the circumstances as well as proved by the testimony." *Ferrill*, 168 F.3d at 476.

The Eleventh Circuit has made clear that a plaintiff's own testimony is sufficient to support an award of compensatory damages for emotional distress, and such damages need not be proven through medical evidence. *See Bogle v. McClure*, 332 F.3d 1347, 1359 (11th Cir. 2003) (upholding compensatory damages award of $500,000 per plaintiff for emotional distress experienced by plaintiffs based on their own testimony that the adverse employment action made them feel "upset," "embarrassed,"

---

[5] According to DMS Bureau Chief Ryan Stokes, as of November 2020, there were 141,000 state employees enrolled in state group health insurance with 363,000 members (employees, spouses and dependents). (ECF 118-9, DMS-Stokes, at 25:25-26:12.)

"humiliated," and "ashamed," where plaintiffs "presented no independent medical evidence of mental or physical harm"); *Marable v. Walker*, 704 F.2d 1219, 1220-21 (11th Cir. 1983) (holding plaintiff's testimony about being embarrassed and humiliated by employer's actions was sufficient to support compensatory damages award, rejecting defendant's arguments that evidence of pecuniary loss, psychiatric disturbance, effect on social activity, or physical symptoms were needed); *Stallworth*, 777 F.2d at 1435 (finding plaintiff's testimony about "emotional stress, loss of sleep, marital strain and humiliation because of violation of his civil rights" was sufficient to support award of $100,000 in compensatory damages for emotional distress).

Plaintiffs seek compensatory damages for the emotional distress that they endured as a result of Defendant causing them to be denied medically necessary healthcare in violation of Title VII. (ECF 123, at 13) (collecting record testimony of Plaintiffs Claire, Murphy, and Lane).

As a result of Defendant's discriminatory policy, Plaintiff Claire will testify she has experienced emotional distress, desperation, fear, stress, anxiety, and physical risk. (*See* ECF 118-5, Claire, 55:21-58:3, 66:11-67:22) (detailing impact of unequal treatment, being deemed a "second class" employee in terms of healthcare, after more than 33 years as a dedicated state employee; the desperation associated with needing treatment for

gender dysphoria; the emotional distress caused by constant fear of a life-threatening blood clot due to denial of the needed procedure; and the impact on quality and enjoyment of life).

As a result of Defendant's discriminatory policy, Plaintiff Murphy will testify he has experienced emotional distress, humiliation, anxiety, fear, and negative impacts on his employment. (*See* ECF 118-23, Murphy, 59:11-61:3) (detailing experiences of having to "hide" himself every day, being unable to breathe during his long work shifts because of the painful and constricting chest binder he had to wear due to denial of the needed procedure); (ECF 121-03, at 7-8) (detailing embarrassing and stigmatizing incidents at work due to being perceived as female)).

As a result of Defendant's discriminatory policy, Plaintiff Lane will testify she has experienced emotional distress, humiliation, stress, and anxiety. (*See* ECF 118-9, Lane, 75:23-76:25) (explaining the feeling of being "viewed as undesirable and unwanted and lesser than by the State of Florida" and being "seen as worthless" and "not worthy of the same health coverage" as non-transgender employees, which has increased stress levels and anxiety.)

Each of the Plaintiffs will testify at trial about the emotional distress they experienced because of Defendant's discriminatory Exclusions.

To make Plaintiffs whole as required under Title VII, Plaintiffs are entitled to reimbursement for the out-of-pocket expenses they incurred caused by Defendant's discriminatory Exclusions. Congress "vested broad equitable discretion in the federal courts to 'order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . . , or any other equitable relief as the court deems appropriate.'" *Franks*, 424 U.S. at 763 (quoting 42 U.S.C. § 2000e-5(g)(1)). *See also Rivers v. Wash. Cnty. Bd. of Educ.*, 770 F.2d 1010, 1012 (11th Cir. 1985) (per curiam) ("[t]he district court has broad, equitable discretion to grant any equitable relief it deems appropriate to make persons whole for injuries suffered on account of unlawful employment discrimination.").

Courts have exercised their equitable powers under 42 U.S.C. § 2000e-5(g)(1) to award victims of unlawful employment discrimination damages for their actual out-of-pocket expenses. The Equal Employment Opportunity Commission, the agency charged with enforcing Title VII, has made clear that "[c]ompensatory damages are awarded to compensate a complaining party for losses or suffering inflicted due to the discriminatory act or conduct." Equal Emp. Opportunity Comm'n, No. Dec. 915.002, 1992

WL 189089, at *4 (July 14, 1992) ("EEOC Guidance"). Compensatory damages "may be had for any proximate consequences which can be established with requisite certainty" and includes "damages for past pecuniary loss (out-of-pocket loss), future pecuniary loss, and nonpecuniary loss (emotional harm)." *Id.*

Compensatory damages under Title VII can include compensation for "moving expenses, job search expenses, *medical expenses*, psychiatric expenses, physical therapy expenses, and other quantifiable out-of-pocket expenses that [we]re incurred as a result of the [Defendant's] discriminatory conduct." *Schroer v. Billington*, No. 05-1090 (JR), 2009 WL 1543686, at *4 (D.D.C. Apr. 28, 2009) (awarding transgender plaintiff past pecuniary losses for therapy sessions and two dental procedures as expenses incurred as a result of Defendant's discriminatory conduct); EEOC Guidance, at *4-5. Such past pecuniary losses are "not included in the [stautory] caps and are fully compensable where actual out-of-pocket losses can be shown." *Id.* at *4.

"Once a defendant is found liable for the plaintiff's injury," as the Court held in this case (ECF 177), "the District Court has a great deal of discretion in deciding the level of damages to be awarded." *Ferrill*, 168 F.3d at 476 (citation omitted). As set forth below, Plaintiffs have incurred out-of-pocket

expenses that they would not have incurred but for Defendant's unlawful Exclusions.

Plaintiff Claire will submit out-of-pocket expenses related to the denial of the insurance claim at issue in this lawsuit in the amount of $18,970.33 that she paid for the denied surgery, including anesthesia, mandatory electrolysis required prior to surgery, and the required consultations with urologist and surgeon. Plaintiff Murphy will submit out-of-pocket expenses in the amount of $9,518.00 he paid for the denied surgery and the chest binding materials used prior to obtaining the needed double mastectomy. Plaintiff Lane will submit out-of-pocket expenses in the amount of $550 she paid for consultations and evaluations for the denied surgery. Plaintiff Lane has been unable to pay out-of-pocket to obtain the needed facial feminization surgery.

The Court, after hearing the undisputed evidence, should award Plaintiffs out-of-pocket costs pursuant to its authority under 42 U.S.C. § 2000e-5(g)(1) to grant "any other equitable relief as the court deems appropriate." *See Tompkins v. Darr*, No. 4:11-CV-93, 2013 WL 6198209, at *2 (M.D. Ga. 2013) ("It is also clear that for [Title VII] violations, an employee may recover compensatory damages and equitable relief. It is the jury's role to determine whether illegal discriminatory conduct occurred and whether an employee should recover compensatory damages. It is the judge's role to

determine whether equitable relief is appropriate. Equitable relief may be appropriate even if a jury does not award compensatory damages.") (citations omitted).

### (2) Attorneys' Fees and Costs

In Title VII actions, a prevailing party is entitled to recover their attorneys' fees and related expenses. 42 U.S.C. § 2000e–5(k); Fed. R. Civ. P. 54(d); *see also Royal Palm Props.*, *LLC v. Pink Palm Props., LLC*, 38 F.4th 1372, 1376 (11th Cir. 2022) ("[T]here are two requirements for a party to reach prevailing party status. First, the party must be awarded some relief on the merits of its claim by the court. Second, the party must be able to point to a resolution of the dispute which materially altered the legal relationship between the parties.") (citations omitted).

This Court concluded that the Exclusions violate Title VII, granting Plaintiffs' motion for summary judgment as to Title VII. (ECF 177.) Thus, attorneys' fees and costs are appropriate in this case. Plaintiffs will seek such relief in accordance with the Federal Rules of Civil Procedure and Local Rules following a jury trial on damages in this case.

Additionally, while Plaintiffs maintain that a "same decision" defense does not apply and has no bearing on the outcome of this case (*see Infra* § I(D)), even if the Court did find that Defendant had succeeded with such a

defense, the defense does not preclude a Title VII plaintiff from other forms of redress, including attorneys' fees and costs.   *See* 42 U.S.C. § 2000e-5(g)(2)(B); *Quigg,* 814 F.3d at 1242-44.

### D. Plaintiff Lane's Relief is Not Limited By the "Same Decision" Defense

A footnote in the Court's Order on summary judgment raised the "same decision" defense with respect to Ms. Lane's Title VII claim. (ECF 177, at 3 n.1.) The Court raised the same decision defense in the context of whether, absent the discriminatory Exclusion for gender-affirming care, Ms. Lane's requested procedure would have been denied under the plan's cosmetic procedure exclusion. (*Id.* at 2-3 & n.1.)

The Court then posed the question for the parties as to what impact, if any, a "same decision" defense would have on Ms. Lane's ability to obtain damages under Title VII.[6] (*Id.* at 3 n.1.) In the paragraph preceding the footnote where the "same decision" defense was discussed, the Order found that Ms. Lane's Equal Protection claim was due to be dismissed for lack of

---

[6] The Court notes, however, that while a successful same decision defense serves as a complete bar to liability in the § 1983 context, it does not serve as a complete bar under Title VII, as plaintiffs can still seek other forms of redress, including declaratory relief and attorneys' fees. (ECF 177, at 3, n.1.) Additionally, 42 U.S.C. § 2000e-5(g)(2)(B) provides that in cases where the employer prevails on the "same decision" defense, the court may grant declaratory relief, injunctive relief, and attorney's fees and costs.

standing, based upon the Court's analysis that "her desired medical procedure would continue to be excluded from coverage under the unchallenged cosmetic procedures exclusion." (*Id.* at 2-3.)[7]

Below, Plaintiff Lane seeks to clarify the record on the standing issue and to address the Court's question as to the applicability of the "same decision" defense.

As an initial matter, the burden to plead and prove the "same-decision" defense is on the defendant. *See, e.g.*, *Hunter v. Underwood*, 471 U.S. 222, 228 (1985); *see also* Fed. R. Civ. P. 8(c) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense."). The "same decision" defense originated in a First Amendment case called *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977). The Eleventh Circuit has recognized that *Mt. Healthy* is an affirmative defense, and that the burden is on defendants to plead and

---

[7] The facts and law supporting Plaintiff Lane's ability to obtain damages under Title VII and the inapplicability of the "same decision" defense (*infra* § (I)(D)) also support a finding that dismissal of Plaintiff Lane's Equal Protection claim based on standing was incorrect.  Plaintiffs maintain that this Court can resolve the case on Plaintiffs' Title VII claims without reaching the constitutional equal protection issue (ECF 175, at 3-5), but Plaintiffs note this position in the event that the Court's finding on redressability for Plaintiff Lane's equal protection claim impacts this Court's analysis of the relief sought under Title VII.

prove such defense. *See Stanley v. City of Dalton*, 219 F.3d 1280, 1292 (11th Cir. 2000).

As this Court acknowledged,[8] Defendant did not raise this defense nor brief this issue at any point throughout this case. While Defendant's Answer to Plaintiffs' Amended Complaint asserts fifteen defenses and affirmative defenses (ECF 57, at 21-24), the "same decision" defense was not among them, nor did Defendant act upon their reserved "right to amend their defenses and affirmative defenses as the cases progresses based on the facts that may be learned through discovery." (*Id.* at 24.) Nor did Defendant cite *Mt. Healthy* or the Title VII cases applying *Mt. Healthy* in any of their briefings.

For the same reason that the "same decision" defense does not bar recovery of damages under Title VII for Ms. Lane, it similarly does not preclude or impact any of Plaintiffs' requested relief, including permanent injunctive relief.

The Court accurately summarized the facts related to Defendant's denial of Ms. Lane's needed procedure: she was denied, and continues to

---

[8] "Here, given the unclear record with respect to any 'same decision' defense and Defendant DMS's failure to brief this issue, questions of fact remain as to whether Ms. Lane is precluded from obtaining damages under Title VII." (ECF 177, at 3, n.1.)

be denied, coverage for facial feminization surgery based on the challenged coverage exclusion for "gender reassignment or modification services and supplies;" the denial of the pre-authorization of her surgery was based exclusively on the gender reassignment exclusion; after submitting an appeal of the denial, an additional exclusion (the cosmetic surgery exclusion) was added as a basis for the denial. (ECF 177, at 2.) However, Plaintiff Lane seeks to correct the record and clarify the Court's statement that "Ms. Lane is not challenging the state plan's cosmetic procedure exclusion." (*Id.*) Based upon this premise, the Court concluded that it could not order injunctive relief that would redress Ms. Lane's injury, due to what was deemed a "failure to demonstrate redressability as to prospective injunctive relief[.]" Plaintiffs recognize that the Court's analysis on this point was specific to the dismissed Equal Protection claim, however clarification on this point is required to adequately address the "same decision" defense's impact on relief under Title VII.

In Plaintiffs' motion for partial summary judgment, they made clear they were challenging the "State Plan Exclusions," which were defined as "exclusions that work together to categorically exclude coverage for medically necessary gender-affirming care, including exclusions for 'gender reassignment and modification services or supplies,' '*cosmetic*

*surgery/services,*' 'sexual reassignment or modification services or supplies,' and prescriptions for 'psychosexual disorders' (Exclusions)." (ECF 123 at 2) (emphasis added); *see also* ECF 136, at 3, n.2 (same); ECF 137, n.1 (same).) Additionally, Plaintiffs explicitly stated in their motion that "[t]he State Plans' categorical exclusion of medically necessary gender-affirming care includes cosmetic surgery to improve a transgender 'member's appearance or self-perception'" (*citing* ECF 122-23, at 59; ECF 122-24, at 33). Because Plaintiffs challenged the cosmetic exclusion when applied in tandem with the discriminatory "gender reassignment" exclusion to exclude needed care for transgender state employees like Ms. Lane, failure to separately challenge the cosmetic exclusion should not serve as a bar to any of Plaintiffs' requested relief.[9]

---

[9] Additionally, according to Fed. R. Civ. P. 54 (c), "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." This rule permits, "or perhaps even requires[,] the trial judge to grant relief to which a party is entitled *even* if not requested in the prayer for relief[.]" *Rau,* 85 F. Supp. 2d at 1350. The only exception is where failure to demand the relief granted prejudices the opposing party. *Id.* Thus, even if the Court finds that Plaintiffs did not separately challenge the cosmetic exclusion, it is undisputable that Defendant received sufficient notice that Plaintiffs challenged the "cosmetic exclusion" in addition to the gender reassignment exclusion, permitting this Court to grant the requested relief related to the cosmetic exclusion.

Though it was never mentioned, even if Defendant *had* raised and briefed the "same decision" defense, it would be of no avail. As Plaintiffs detailed in their summary judgment briefing, including citations to extensive record evidence and testimony, the "gender reassignment" categorical exclusion and the "cosmetic" categorical exclusion work in unison to categorically exclude coverage of care uniquely specific to transgender employees. (ECF 123, at 8 (explaining that "under the cosmetic exclusion's guidelines, certain types of 'gender reassignment' surgery, such as facial feminization, are categorically denied without allowing for an individualized determination of whether the surgery is medically necessary to treat gender dysphoria"); *see also* ECF 136, at 28 ("Cosmetic procedures for any purpose *other than* 'gender reassignment' are analyzed under the State Plan's general coverage criteria, which provide for coverage of cosmetic services, including 'any service to improve the appearance or self-perception of an individual,' under certain circumstances.") (internal citations omitted).)

The procedures sought by Ms. Lane would otherwise be reviewed for medical necessity, but the "gender reassignment" exclusion prevents that process. All procedures for purposes of "gender reassignment" are categorically excluded, thus they are never subjected to medical necessity analysis or coverage criteria under the cosmetic exclusion. (ECF 123, at 8-

10, 15-17, 36-37 (collecting record evidence demonstrating that facial feminization surgery to treat gender dysphoria is categorically excluded; and because of the gender reassignment exclusion, a claim for coverage of facial feminization surgery, the purpose of which is to treat gender dysphoria, is not subjected to a medical necessity analysis nor assessed for coverage under the cosmetic exclusion); *see also* ECF 136, at 27-31.) While facial feminization surgeries for the purpose of gender reassignment are not covered, the same procedures are covered for other medical reasons such as sinus issues, congenital deformity or the result of an accident. (ECF 118-3, CHP-Frost, 22:19-25, 40:14-43:1.)

Defendant cannot say with any degree of certainty, and unquestionably has not shown, that Ms. Lane's needed facial feminization procedures "would continue to be excluded from coverage" under the "cosmetic procedures" Exclusion. Such a conclusion would be speculative, at best. (*Id.* at 25:21-26:11 (CHP Representative stated that a claim such as Ms. Lane's "*could* also fall under the cosmetic" exclusion) (emphasis added).) However, due to the Exclusions, DMS expressly precludes Ms. Lane from demonstrating the treatments she seeks are medically necessary and within one of the cosmetic and reconstructive surgery exceptions simply because she is a transgender woman.

Thus, Plaintiffs have shown that because of the "gender reassignment" exclusion, Ms. Lane's requested procedure was never subjected to a medical necessity analysis as it otherwise would have been, even if the state deemed it to be a "cosmetic" surgery. Defendant has made no showing it would have made the "same decision" to deny coverage regardless of the gender reassignment exclusion, which this Court has held constitutes discrimination based on sex. Therefore, even if Defendant had raised the "same decision" defense, it would fail under the facts of this case. *See Quigg,* 814 F.3d at 1242 (holding defendants' "same decision" defense – which requires the employer to demonstrate it "would have taken the same action in the absence of the impermissible motivating factor" (2000e–5(g)(2)(B)) – failed). Like the Eleventh Circuit held in *Quigg*, after looking at the evidence in this case, "no genuine issue exists as to whether [Defendant DMS] would have made the same decision absent illegal bias." *Id.* at 1243-44 (evidence put forth by school board defendants "would not provide sufficient evidentiary support that their decisions were made without regard to sex"); *see* ECF 136, at 5 (DMS contends that Exclusion expressly using the words "gender" and "sex" to define what is excluded are not a sex-based exclusions) (citing ECF 122-23, at 60, 62; ECF 122-24, at 36)).

Thus, the "same decision" defense is inapplicable in this case and this Court's ordering of injunctive relief would redress Ms. Lane's injury, as it would allow the requested procedure to be subjected to medical necessity analysis.[10]

## II. Eleventh Circuit's Decision to Vacate the *Lange* Decision Pending Rehearing *En Banc* Does Not Foreclose Plaintiffs' Claims

### A. Impact of Vacated Opinions Pending Rehearing *En Banc*

Once an opinion is vacated, it has no precedential effect and cannot be considered as expressing a view of the Eleventh Circuit. *Fair Fight Action, Inc. v. Raffensperger*, 413 F. Supp. 3d 1251, 1278 (N.D. Ga. 2019); *see United States v. Sigma Int'l, Inc.*, 300 F.3d 1278, 1280 (11th Cir. 2002).

However, the Court may give the vacated opinion persuasive value if the Court thinks that the vacated opinion deserves it. *Cf. Friends of Everglades v. S. Fla. Water Mgmt. Dist.,* 570 F.3d 1210, 1218 (11th Cir. 2009) ("We are free to give statements in a vacated opinion persuasive value

---

[10] Plaintiffs' summary judgment briefing lays out why these procedures, even if deemed "cosmetic" for cisgender individuals, are medically necessary treatments for gender dysphoria for some transgender individuals. (ECF 136, at 27-31 (even Defendant's expert agreed the procedures sought by Ms. Lane can be medically necessary for the treatment of gender dysphoria); *see also* ECF 122-16, at 3 (WPATH Position Statement clarifying these procedures are "not 'cosmetic' or 'elective' . . . [i]n some cases, such surgery is the only effective treatment for the condition").)

if we think they deserve it."); *see also United States v. W.B.H.,* 664 F.3d 848, 853 n.3 (11th Cir. 2011).

## B. Impact of the Eleventh Circuit Vacating *Lange*

The Eleventh Circuit's opinion in *Lange v. Houston County,* 101 F.4th 793 (11th Cir. 2024), did not create new principles of law, rather it reiterated principles based in longstanding Supreme Court and Eleventh Circuit precedent. As such, regardless of the decision reached by the Court *en banc* in *Lange*, the rationale expressed in the now vacated *Lange* opinion remains intact, as it follows the clear logic of the Supreme Court's decisions in *Newport News Shipbuilding & Dry Dock Co. v. EEOC ("Newport News"),* 462 U.S. 669 (1983), *Bostock v. Clayton Cnty., Ga.,* 140 S. Ct. 1731 (2020), and *City of Los Angeles, Dep't of Water & Power v. Manhart*, 435 U.S. 702 (1978), and the Eleventh Circuit's decisions in *Glenn v. Brumby,* 663 F.3d 1312 (11th Cir. 2011), and *Copeland v. Ga. Dep't of Corr.,* 97 F. 4th 766 (11th Cir. 2024).

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The Supreme Court has

long held that employer-provided health insurance coverage is compensation under Title VII. *See Newport News,* 462 U.S. at 682. While employers are not required to provide coverage for every possible medical treatment, they cannot exclude specific treatments on the basis of sex. The Supreme Court has made clear that "discrimination based on…transgender status *necessarily entails* discrimination based on sex" as prohibited under Title VII. *Bostock*, 140 S. Ct. at 1746-47. This is because an employer who discriminates based on transgender status is intentionally treating that employee differently "because of their sex." *Id.* at 660-61 ("[H]omosexuality and transgender status are inextricably bound up with sex…[T]o discriminate on these grounds requires an employer to intentionally treat individual employees differently because of their sex."); *see also Glenn,* 663 F. 3d. at 1316 ("[T]he very acts that define transgender people as transgender are those that contradict stereotypes of gender-appropriate appearance and behavior."); *Copeland,* 97 F. Supp. at 775 (quoting *Bostock,* 140 S. Ct. at 1743); *Winstead v. Lafayette Cnty. Bd. of Cnty. Comm'rs*, 197 F. Supp. 3d 1334, 1345 (N.D. Fla. 2016) (quoting *Glenn*, 663 F.3d at 1316).

Additionally, in the April 2024 enforcement guidelines issued by the U.S. Equal Employment Opportunity Commission (EEOC), the agency clarified that sex-based harassment under Title VII "includes harassment

based on sexual orientation or gender identity[.]" (U.S. Equal Emp. Opportunity Comm'n, EEOC-CVG-2024-1, Enforcement Guidance on Harassment in the Workplace (2024).)

In this case, "the undisputed facts demonstrate that the challenged exclusions apply only to transgender members, as only transgender individuals would seek the gender-affirming treatment that is excluded from coverage." (ECF 177, at 14.) Thus, the Exclusions explicitly target transgender employees for differential treatment, discriminating on the basis of sex and transgender status. Additionally, fifty years of Supreme Court precedent confirm that what DMS is subjecting Plaintiffs to constitutes unlawful sex stereotyping. (*See* ECF 139, at 6-9.) Meanwhile, Defendant's arguments rely upon theories that both the Supreme Court and Congress have flatly rejected. (*See* ECF 136, at 5-10; ECF 139, at 2-9.)

In analyzing Title VII claims, where an employer's policy or practice discriminates against a protected characteristic, no further proof of disparate intent is needed. *See Bostock,* 140 S. Ct. at 1745-46; *see also Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Johnson Controls, Inc.,* 499 U.S. 187, 199 (1991) (holding that "[w]hether an employment practice involves disparate treatment through explicit facial discrimination does not depend on why the employer discriminates but rather

on the explicit terms of the discrimination"). As this Court concluded in its Order on summary judgment, the Exclusions discriminate on the basis of sex and transgender status, constituting facial discrimination which can only be defended as a bona fide occupational qualification, which Defendant failed to argue in this case. (ECF 177, at 12-13.)

As Plaintiffs have demonstrated in extensive briefing both pre-dating and post-dating the vacated *Lange* decision, Plaintiffs' Title VII claims are supported by decades of binding precedent. (*See* ECF 123, at 30-43; ECF 136; ECF 139, at 1-9; ECF 170, at 3-6; ECF 173, at 1-11.) The Eleventh Circuit's vacating of *Lange* pending en banc review does not necessitate a different outcome on Plaintiffs' Title VII claims. In concluding that Defendant DMS is liable under Title VII based on its administration of the Exclusions, which were held to be a facially discriminatory employer action, this Court correctly applied the decades of binding Supreme Court and Eleventh Circuit precedent firmly supporting that conclusion. (ECF 177, at 11-16.)

## III.   The Eleventh Amendment Does Not Impact Relief Sought by Plaintiffs

In Defendant DMS's Answer to Plaintiffs' Amended Complaint (ECF 57, at 22), Defendant asserted the following affirmative defense: "One or more of the Plaintiffs' claims is barred by the doctrine of Sovereign Immunity and/or Eleventh Amendment immunity, including but not limited to, any claim

for money damages." This was reiterated during the August 16, 2024, status conference with the Court, at which time counsel for Defendant raised that Eleventh Amendment immunity impacted Plaintiffs' ability to seek compensatory damages.

Defendant DMS has never argued or briefed the Eleventh Amendment nor the doctrine of Sovereign Immunity, rather only Defendant Allende (formerly Defendant Satter) – who is no longer a party to this case, as the claims against him were dismissed – made such an argument. (ECF 125, at 33-34.) Plaintiffs addressed this argument from Defendant Allende in their summary judgment briefing. (ECF 137, at 37-38 (explaining the relief sought was not barred by the Eleventh Amendment, as Defendant Allende mischaracterized the relief sought by Plaintiffs as "retroactive payment of benefits" as opposed to prospective injunctive relief prohibiting future enforcement of the discriminatory Exclusions).)

The Eleventh Amendment does not serve as a defense for Defendant DMS under Title VII. Exceptions to Eleventh Amendment immunity exist if the state waives immunity and consents to suit in federal court, or if Congress abrogates the state's immunity by statute. *Huang v. Johnson*, 251 F.3d 65, 69-70 (2d Cir. 2001). Congress has abrogated the State's sovereign immunity by enacting the 1972 amendments to Title VII, pursuant to the

authority of section 5 of the 14 Amendment. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976).

## IV.    Conclusion

Plaintiffs respectfully request that this Court award declaratory and injunctive relief and out-of-pocket costs under Title VII, and schedule a jury trial to award compensatory damages.

Respectfully submitted on this 13th day of September, 2024.

*/s/ Simone Chriss*
**SIMONE CHRISS**
Fla. Bar No. 124062
simone.chriss@southernlegal.org
**JODI SIEGEL**
Fla. Bar No. 511617
jodi.siegel@southernlegal.org
Southern Legal Counsel, Inc.
1229 NW 12th Avenue
Gainesville, FL 32601
(352) 271-8890

**DANIEL TILLEY**
Fla. Bar No. 102882
dtilley@aclufl.org
**CAROLINE MCNAMARA**
Fla. Bar No. 1038312
cmcnamara@aclufl.org
ACLU Foundation of Florida
4343 West Flagler St., Suite 400,
Miami, FL 33134
(786) 363-2714

*ATTORNEYS FOR ALL PLAINTIFFS*

**JEFFREY HEARNE**

Fla. Bar No. 512060
jhearne@legalservicesmiami.org
**JOCELYN ARMAND**
Fla. Bar No.44264
jarmand@legalservicesmiami.org
Legal Services of Greater Miami, Inc.
4343 W Flagler Street, Suite 100
Miami, FL 33134
(305) 438-2403

*ATTORNEYS FOR PLAINTIFF
MURPHY*

## CERTIFICATE OF WORD COUNT

Pursuant to N.D. Loc. R. 7.1(F), I certify this Response to Court's Order for Supplemental Briefing contains 7,063 words, which includes headings, footnotes, and quotations, but does not include case style, signature block or Certificates of Word Count and Service.

*/s/ Simone Chriss*
**Counsel for Plaintiffs**