**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

JAMI CLAIRE, et al.,

      Plaintiffs,

vs.                         Case No. 4:20-cv-00020-MW/MAF

FLORIDA DEPARTMENT OF
MANAGEMENT SERVICES, et al.,

      Defendants.

_____/

**PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO**
**COURT'S ORDER FOR SUPPLEMENTAL BRIEFING**

Plaintiffs file this Reply to Defendant's Response to Plaintiffs' Supplemental Brief (ECF 182) to address an argument raised and briefed by Defendant DMS for the first time in this case regarding the abrogation of sovereign immunity under Title VII. (ECF 183, at 8-15.)

Defendant Allende raised sovereign immunity as a defense to Plaintiffs' Equal Protection claims (ECF 125, at 33-34) ("Eleventh Amendment Immunity bars the claim for injunctive relief against [Allende]"), but Defendant Allende is no longer party to this case and Plaintiffs' Equal Protection claims were dismissed by this Court (ECF 177, at 2-3) ("Defendant Allende's motion for summary judgment, ECF No. 125, is due to be denied as moot.").This defense was never raised nor briefed by

Defendant DMS with regard to Plaintiffs' Title VII claims.

Defendant DMS' argument that Eleventh Amendment immunity precludes Plaintiffs from recovering damages under Title VII in this case fails for two reasons. First, this Court already concluded that Plaintiffs' claims "brought pursuant to Title VII … are not barred by the Eleventh Amendment." (ECF 95, at 8 n.2); *see infra* § I. Second, it is firmly established that, in subjecting States to liability under Title VII of the Civil Rights Act, Congress both clearly expressed its intent to abrogate the Eleventh Amendment immunity of state employers, and validly did so pursuant to its authority under Section 5 of the Fourteenth Amendment. *Fitzpatrick v. Bitzer,* 427 U.S. 445 (1976). Defendant concedes this. (ECF 183, at 8) ("It has long been held that Title VII derives its authority to apply to the states from Section 1 and Section 5 of the Fourteenth Amendment."), but argues for a novel approach without merit or support. *See infra* § II.

Finally, Plaintiffs briefly clarify a misstatement by Defendant regarding the lack of personal benefit conferred upon Plaintiff Lane by the Court's granting of permanent injunctive relief in this case. (ECF 183, at 4-8.) As made clear by Defendant's own admissions and abundant record testimony, Plaintiff Lane is currently employed by Defendant and thus subject to the discriminatory Exclusions, and, because she needs ongoing gender-

affirming care, the discrimination will likely persist in the future. *See infra* §

III.

## I.    THIS COURT CONCLUDED PLAINTIFFS' TITLE VII CLAIMS ARE NOT BARRED BY THE ELEVENTH AMENDMENT

Like Plaintiffs, this Court has not had the opportunity to address the

application of the Eleventh Amendment to Plaintiffs' Title VII claims against

Defendant DMS, as such defense was only raised in Defendant Allende's

Motion for Summary Judgment on Plaintiffs' Equal Protection Claims. (ECF

125, at 33-34.) Defendant Allende is no longer a party to this action, and

Plaintiffs' Equal Protection claims were dismissed by this Court. (ECF 177,

at 2-3.)

However, this Court previously addressed the application of the Eleventh

Amendment to Plaintiffs' Title VII claims in its Order on Defendant-

employers' Motions to Dismiss. (ECF 95, at 8.) There, the Court explicitly

stated that "*unlike* Counts II-IV [Plaintiffs' Title VII claims], Counts VII-VIII

[Plaintiffs' Equal Protection claims under 42 U.S.C. § 1983] do not fall within

an exception to state sovereign immunity." (ECF 95, at 8) (*citing* U.S. Const.

amend XI) (emphasis added). This Court explained that "Counts II-IV are

brought pursuant to Title VII and are not barred by the Eleventh

Amendment." (*Id.* at n.2) (*citing Allen v. Ala. State Bd. of Educ.,* 816 F.2d

575, 577 (11th Cir. 1987)).

## II.    <u>ELEVENTH AMENDMENT IMMUNITY DOES NOT PRECLUDE PLAINTIFFS FROM RECOVERING DAMAGES UNDER TITLE VII</u>

The Supreme Court has long held that "[t]here is no dispute that in enacting the 1972 Amendments to Title VII to extend coverage to the States as employers, Congress exercised its power under § 5 of the Fourteenth Amendment." *Fitzpatrick,* 427 U.S. at 453 n.9 (*citing* H.R. Rep. No. 92-238, p. 19 (1971); S. Rep. No. 92-415, pp. 10-11 (1971)); *see also In re Emp. Discrimination Litig. Against State of Ala.*, 198 F.3d 1305, 1317 (11th Cir. 1999) (the Eleventh Circuit held "we have no hesitation in concluding that Congress unequivocally expressed its intent to abrogate the states' Eleventh Amendment immunity when it amended Title VII to cover state and local governments").

The 1972 Amendments to Title VII authorized federal courts to award money damages in favor of a private individual against a state government that subject that individual to discrimination on the basis of race, color, religion, *sex*, or national origin. *Fitzpatrick,* 427 U.S. at 447-48 (emphasis added).[1] This Court concluded that the State Plan Exclusions at issue in this

---

[1] Congress did so based on "a broad pattern of discrimination[,] combining documented instances of intentional discrimination by state governments with extensive numerical evidence of race- and gender-based disparities in pay and promotions." Claude Platton, Title VII Disparate Impact Suits Against State Governments after Hibbs and Lane, 55 Duke Law Journal 641, 661 (2005) ("after reviewing its gender-discrimination jurisprudence, the Court concluded that 'Congress responded to this history of discrimination by abrogating State's sovereign immunity" in Title VII.) As the Supreme

case, which are implemented and administered by Defendant DMS, subjected Plaintiffs to discrimination on the basis of sex in violation of Title VII. (ECF 177, at 14-16.) The Eleventh Amendment does not preclude Plaintiffs from recovering money damages in this case, and Defendant's arguments to the contrary are unavailing.

In light of binding authority from the Supreme Court and the Eleventh Circuit that disposes of this argument, this Court does not need to undertake the "congruence and proportionality" analysis that Defendant incorrectly alleges is required.

Defendant does not dispute that Congress abrogated the State's sovereign immunity by enacting the 1972 amendments to Title VII, pursuant to section 5 of the Fourteenth Amendment, providing a private right of action for damages against States. (ECF 183, at 8; *Fitzpatrick*, 427 U.S. at 456; *see also Quern v. Jordan,* 440 U.S. 332, 344 (1979) (the Supreme Court affirmed this, noting that "the statute made explicit reference to the availability of a private action against state and local governments")). Nor do they dispute that, in doing so, Congress both "unequivocally expresse[d] its intent to abrogate" the Eleventh Amendment immunity and "acted 'pursuant to a valid

---

Court noted in *Nevada Dep't of Human Resources v. Hibbs,* "Congress responded to this history of discrimination by abrogating State's sovereign immunity in Title VII of the Civil Rights Act of 1964." 538 U.S. 721, 729 (2003).

exercise of power.'" *See Seminole Tribe of Fla. v. Fla.,* 517 U.S. 44, 55 (1996) (*quoting Green v. Mansour,* 474 U.S. 64, 68 (1985)). Defendant does not dispute that when Congress enacts a statute that regulates conduct prohibited by the Constitution, there is no need to examine the record before Congress to determine whether Congress could have reasonably concluded the remedy was appropriate. This is because when a statute simply codifies the protections of Section 1 of the Fourteenth Amendment, it is by definition appropriate Section 5 legislation because the statute is congruent and proportional to the targeted constitutional harm. *See City of Boerne v. Flores,* 521 U.S. 507, 517-519. Finally, Defendant does not, and could not, dispute that Title VII's prohibition of disparate treatment on the basis of sex codifies the protections of Section 1 of the Fourteenth Amendment.

Rather, in raising this new defense, Defendant seeks to redefine "discrimination on the basis of sex" to exclude discrimination against transgender people, in direct conflict with the Supreme Court's clear holding in *Bostock v. Clayton Cnty., Ga.,* 590 U.S. 644 (2020). *Bostock* held that "discrimination based on homosexuality or transgender status necessarily entails discrimination based on sex; the first cannot happen without the second." *Id*. at 669. Defendant's position also ignores that this Court already concluded, in a well-reasoned Order based on an extensive record, that the

"facially discriminatory state group insurance plan" violates Title VII's prohibition on discrimination on the basis of sex. (ECF 77, at 11-16) (concluding that "there is no dispute of material fact with respect to Defendant DMS's liability under Title VII"). The "congruence and proportionality" test that Defendant now asks this Court to apply is only appropriate when there is a dispute as to whether Congress unequivocally intended to abrogate the States' Eleventh Amendment immunity and acts pursuant to a valid grant of constitutional authority. Neither is in dispute here because the Supreme Court has already addressed this issue.

The Supreme Court has consistently made clear that: (1) Congress clearly expressed its intent to abrogate State's Eleventh Amendment immunity in enacting Title VII (*Quern,* 440 U.S. at 344; *Fitzpatrick,* 427 U.S. at 452); (2) Congress's abrogation was valid (*Fitzpatrick*, 427 U.S. at 453, & n.9); and (3) discrimination that targets transgender people for disparate treatment falls within Title VII's prohibition of sex based discrimination (*Bostock,* 590 U.S. at 669-70). As such, there is no need for reexamination of the record to determine whether Congress identified "a history and pattern of employment discrimination by the States." Such inquiry is only necessitated when the statutory prohibition places greater limits on States than the Constitution. *Bd. of Trustees of Univ. of Ala. v. Garrett,* 531 U.S.

356, 356-57 (2001). Despite Defendant's continued attempt to reframe the discrimination at issue in this case, the State Plan Exclusions plainly discriminate on the basis of sex, which is prohibited by both the Fourteenth Amendment (*City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440-41 (1985)) and Title VII (42 U.S.C. § 2000e-2(a); *see also Glenn v. Brumby,* 663 F.3d 1312 (11th Cir. 2011)). No further inquiry is required.[2]

In *Bostock*, the Supreme Court addressed and dismissed the very arguments that Defendant now raises. (ECF 183, at 12-13) (arguing that nothing in Title VII, nor the Pregnancy Discrimination Act or the related congressional record, "reflects that Congress contemplated gender dysphoria" or "medical treatments related to gender dysphoria"). In *Bostock,* the employers contended that "few in 1964 would have expected Title VII to apply to discrimination against homosexual and transgender persons," which they claimed was evidenced by the fact that "homosexuality and transgender status can't be found on th[e] list" of Title VII's "protected characteristics" and were thus "implicitly excluded from Title VII's reach." 590 U.S. at 669-673. The Court thoroughly analyzed and ultimately dismissed

---

[2] This is reenforced by the precedent Defendant cites in support of its argument. *See Garrett*, 531 U.S. at 365 (noting that Section 5 legislation *reaching beyond the scope of Section 1's actual guarantees* must exhibit congruence and proportionality between the injury to be prevented or remedies and the means adopted to that end.) There, the Court looked to the record for evidence of constitutional violations *only* because it determined the statutory protections were incongruent with the constitutional protections.

employers' position that Congress did not intend for Title VII to prohibit discrimination on these bases, as "discrimination based on homosexuality or transgender status necessarily entails discrimination based on sex; the first cannot happen without the second." *Id.* at 669 ("Nor is there any such thing as a 'canon of donut holes,' in which Congress's failure to speak directly to a specific case that falls within a more general statutory rule creates a tacit exception. Instead, when Congress chooses not to include any exceptions to a broad rule, courts apply the broad rule. And that is exactly how this Court has always approached Title VII.").

In fact, in making its argument regarding Eleventh Amendment immunity, Defendant relies exclusively on cases involving statutes wholly irrelevant to the issues or claims present in the instant case. This is because the law is clear; Defendant cannot point to any case which has held sovereign immunity protects a state from liability for damages in a Title VII case.

Instead, Defendant only cites cases discussing statutes inapplicable to this case. (ECF 183, at 8-15 (citing cases regarding statutory prohibitions related to **disability based discrimination** (*Garrett*, 531 U.S. 356 (Title I of the Americans with Disabilities Act ("ADA")); *Panzardi-Santiago v. Univ. of Puerto Rico,* 200 F. Supp. 2d 1 (D.P.R. 2002) (Title II of ADA); *Dupree v. Owens,* 92 F. 4th 999 (11th Cir. 2004) (Title V of ADA); *Nat'l Ass'n of the*

*Deaf v. Fla.,* 980 F.3d 763 (11th Cir. 2020) (Title II of ADA); *Ass'n for Disabled Ams., Inc. v. Fla. Int'l Univ.,* 405 F. 3d 954 (11th Cir. 2005) (same)); **age based discrimination** (*Kimel v. Fla. Bd. of Regents,* 528 U.S. 62 (2000)[3] (Age Discrimination in Employment Act ("ADEA")); **statutory prohibitions related to pregnancy and abortion** (*Geduldig v. Aiello,* 417 U.S. 484 (1974) (regulating pregnancy); *Gen. Elec. Co. v. Gilbert*, 429 U.S. 125 (1976) (same); *Dobbs v. Jackson Women's Health Org.,* 597 U.S. 236 (2022) (regulating abortion); *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263 (1993) (same)); and **other unrelated statutory provisions** (*Coleman v. Ct. of App. of Md.,* 566 U.S. 30 (2012) (Family Medical Leave Act "FMLA"); *Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank,* 527 U.S. 627 (1999) (Patent Remedy Act)).[4]   None of these cases

---

[3] In *Kimel*, upon which Defendant heavily relies, the Court specifically distinguished legislation that addresses discrimination on the basis of gender from those based on age at issue in that case. 528 U.S. at 83 ("Age classifications, *unlike* governmental conduct based on race or *gender*, cannot be characterized as 'so seldom relevant to the achievement of any legitimate state interest that laws grounded in such considerations are deemed to reflect prejudice and antipathy.' *Cleburne v. Cleburne Living Center, Inc.*, 473 U. S. 432, 440 (1985). Older persons, again, unlike those who suffer discrimination on the basis of race or gender, have not been subjected to a 'history of purposeful unequal treatment.'") (citation omitted) (emphasis added).

[4] In conducting an analysis of the Equal Pay Act ("EPA"), the Eleventh Circuit distinguished the cases relied upon by Defendant in their abrogation argument. "Unlike the legislative records in the ADEA, RFRA, and the Patent Remedy Act, the legislative record of the Equal Pay Act reflects that Congress did find substantial gender-based wage discrimination in the workplace." *Hundertmark v. State of Fla. Dep't of Transp.*, 205 F.3d 1272, 1276-77 (11th Cir. 2000) (concluding EPA's prohibition on gender-based discrimination in pay "and other employment benefits" was congruent with decisions and practices prohibited by the Constitution, satisfying congruence and proportionality test as

hold that states retain sovereign immunity in Title VII cases.

The Supreme Court and the Eleventh Circuit have both clearly held that Congress abrogated sovereign immunity under the Eleventh Amendment when it applied Title VII to the states. *Fitzpatrick,* 427 U.S. at 453; *In re Emp. Discrimination Litig. Against State of Ala.*, 198 F.3d at 1317; *Wu v. Thomas*, 863 F.2d 1543, 1550 (11th Cir. 1989) (reversing the district court, the Eleventh Circuit found "[b]ecause appellants' claim under 42 U.S.C. § 2000e arises under Title VII of the 1964 Act, no eleventh amendment barrier exists[,]" and further noting the availability of equitable relief and damages awards under Title VII). Defendant's sovereign immunity argument is without merit and Plaintiffs can recover damages against Defendant under Title VII.

## III.   **PERMANENT INJUNCTIVE RELIEF IS PROPER, AS PLAINTIFF LANE WILL PERSONALLY BENEFIT**

Plaintiffs seek to clarify for this Court a misstatement by Defendant regarding the lack of personal benefit conferred upon Plaintiff Lane by the Court's granting of permanent injunctive relief in this case. (ECF 183, at 4-8.) As this Court concluded, based on Defendant's own admissions, the care that Plaintiff Lane currently needs, and will continue to need, is subject to the State Plan Exclusions. (ECF 177, at 14) ("Defendant DMS admits that the

---

a valid exercise of Congress's enforcement powers under § 5 of the Fourteenth Amendment).

challenged exclusion 'prohibits coverage' of hormone replacement therapy, double mastectomy, orchiectomy, and any other form of surgical treatment to treat gender dysphoria.") (citation omitted). Plaintiff Lane has been prescribed hormone replacement therapy as medically necessary treatment for her gender dysphoria since 2012 (ECF No. 122-19, at 18:22-19:2), she will continue to need such treatment, and Defendant admits that "the state plans do not permit coverage for hormone replacement therapy as treatment for gender dysphoria" (ECF No. 122-4 at 9; *see also id.* at 14) ("Admitted" that the "State Plan Exclusion prohibits coverage of hormone replacement therapy to treat gender dysphoria.").

Additionally, a requirement for receiving her hormone replacement therapy is that Plaintiff Lane obtains blood work/labs and has office visits with her provider to monitor the hormone therapy (ECF 122-19, at 20:15-18), which Third Party Administrators of the State Plans, who are tasked with administering the Exclusions, testified are excluded when needed for "sexual reassignment" (ECF 118-14, at 19:2-20:24) (Florida Blue testified the Exclusions incorporate "labs, X-rays, office visits, psychotherapy, surgery"), *see also id.* at 31:12-16 (all diagnosis codes for "gender identity disorders" are excluded from coverage); ECF 118-4, at 24:3-7, 37:24-38:15) (Capital Health Plan follows Florida Blue's guidelines on which services fall under the

Exclusions); ECF 118-2, at 9:9-10:5, 15:17-17:18 (AvMed testified that the diagnosis code for gender dysphoria (F64) triggers the application of the Exclusions).

As a current state of Florida employee, Plaintiff Lane also may require additional gender-affirming surgeries as treatment for her gender dysphoria, in addition to the denied procedure at issue in this case. (ECF 122-19, at 58:15-59:12.) These procedures would be denied under the Exclusions because they are for the treatment of gender dysphoria. (ECF 122-4, at 14 ("Admitted" that "the State Plan Exclusion prohibits coverage of *any* form of surgical treatment to treat gender dysphoria").

In suggesting that Eleventh Circuit precedent requires a finding against permanent injunctive relief here, Defendant relies only on cases inapposite to the instant case. (ECF 183, at 4-8.) For example, in *Carmichael* (*id.* at 5-6), permanent injunctive relief was deemed inappropriate despite a successful claim against a former employee for race-based discrimination because the plaintiff was no longer employed by defendant and had not sought reinstatement. *Carmichael v. Birmingham Saw Works,* 738 F.2d 1126, 1136 (11th Cir. 1984). Unlike the employee in *Carmichael*, Plaintiff Lane continues to be employed by Defendant and, because she needs ongoing gender-affirming care, the discrimination will likely persist in the

future.

For the reasons set forth above, Plaintiffs dispute Defendant's misstatement that permanent injunctive relief would not benefit Lane. Further, as set forth above and in Plaintiffs' Response to Supplemental Briefing (ECF 182, at 3-9), even if the Court concludes Plaintiff Lane's facial feminization surgery would have been excluded as "cosmetic," it does not change the fact that Plaintiff Lane continues to be employed by the state, continues to be subjected to the discriminatory Exclusions, and would personally benefit from a permanent injunction in this case.

Respectfully submitted on this 22nd day of October, 2024.

/s/ Simone Chriss
**SIMONE CHRISS**
Fla. Bar No. 124062
simone.chriss@southernlegal.org
**JODI SIEGEL**
Fla. Bar No. 511617
jodi.siegel@southernlegal.org
Southern Legal Counsel, Inc.
1229 NW 12th Avenue
Gainesville, FL 32601
(352) 271-8890

**DANIEL TILLEY**
Fla. Bar No. 102882
dtilley@aclufl.org
**CAROLINE MCNAMARA**
Fla. Bar No. 1038312
cmcnamara@aclufl.org
ACLU Foundation of Florida
4343 West Flagler St., Suite 400,

Miami, FL 33134
(786) 363-2714

*ATTORNEYS FOR ALL PLAINTIFFS*

**JEFFREY HEARNE**
Fla. Bar No. 512060
jhearne@legalservicesmiami.org
**JOCELYN ARMAND**
Fla. Bar No.44264
jarmand@legalservicesmiami.org
Legal Services of Greater Miami, Inc.
4343 W Flagler Street, Suite 100
Miami, FL 33134
(305) 438-2403

*ATTORNEYS FOR PLAINTIFF
MURPHY*

## <u>CERTIFICATE OF WORD COUNT</u>

Pursuant to N.D. Loc. R. 7.1(F), I certify this Reply to Defendant's Response to this Court's Order for Supplemental Briefing contains 3,090 words, which includes headings, footnotes, and quotations, but does not include case style, signature block or Certificates of Word Count and Service.

*/s/ Simone Chriss*
**Counsel for Plaintiffs**