## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**JAMI CLAIRE, KATHRYN LANE,**
**and AHMIR MURPHY**

**Plaintiffs,**

**v.**                                           **CASE NO. 4:20-cv-0020-MW-CAS**

**FLORIDA DEPARTMENT OF**
**MANAGEMENT SERVICES and**
**PEDRO ALLENDE, in his official**
**Capacity as Secretary of the Florida**
**Department of Management Services.**

**Defendants.**
_____ /

## DEFENDANTS' MOTION FOR RECONSIDERATION OF ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Defendants, FLORIDA DEPARTMENT OF MANAGEMENT SERVICES, and PEDRO ALLENDE in his official capacity as Secretary of the Florida Department of Management Services (collectively, "Defendants"), by and through undersigned counsel, hereby respond in accordance with the Parties' Joint Status Report. (Doc. 190.) Defendants move this Court to reconsider its Order on Cross-Motions for Summary Judgment (Doc. 177) based on the arguments raised in Defendants' previous memoranda (*See* Docs. 125-126, 135, 140, 141, 155, 160, 171, 172, 174 and 183) and in light of the Eleventh Circuit's *en banc* decision in *Lange v. Houston Cnty., Georgia*, 152 F.4th 1245 (11th Cir. 2025).

1

Specifically, Defendants ask this Court to deny Plaintiffs' motion for summary judgment because the State Health Plan does not facially discriminate based on sex. Moreover, because the Plan is not facially discriminatory, and because there is no evidence of intentional discrimination based on sex in the record, final summary judgment in favor of Defendants is warranted on all claims.

## I.    Reconsideration is warranted in light of changes in the law.

A nonfinal order "may be revised at any time before the entry of a [final] judgment." *See* Fed. R. Civ. P. 54(b). Rule 60(b)(6) also authorizes relief from an order for any reason that justifies relief. Reconsideration should be employed sparingly but is within the sound discretion of the trial court and may be justified based upon an intervening change in controlling law. *See Saadi v. Maroun*, 2022 WL 1738002, at *1 (M.D. Fla. Mar. 15, 2022) *citing Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 806 (11th Cir. 1993). Here, reconsideration of the Court's Order on Cross-Motions for Summary Judgment (Doc. 177) is warranted based on a significant change in controlling Eleventh Circuit precedent.

## II.    The Court's Order on Cross-Motions and procedural history.

The First Amended Complaint asserts a Title VII discrimination claim against DMS (Count 1) and an Equal Protection Claim against the Secretary (Count V). (Doc. 34.) In February of 2021, Defendants moved for summary judgment on both claims.

(Docs 125 and 126.) Plaintiffs moved for partial summary judgment, asking the Court to find liability on the Title VII and Equal Protection claims and allow the Title VII claim to proceed to trial on damages. (Doc. 123.)

In 2023, Defendants provided supplemental briefing to the Court as to the impact of the Eleventh Circuit's *en banc* opinion in *Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.,* 57 F.4th 791 (11th Cir. 2022)[1] on the pending motions. (Doc. 160.) The *en banc Adams* opinion, which addressed the constitutionality of a public-school bathroom policy based on biological sex, held that sex is not akin to gender identity and that transgender status is not a proxy for biological sex. *Adams*, 57 F.4th at 807-808.

In May of 2024, the Court asked the Parties for supplemental briefing, particularly to address the recent opinion, *Lange v. Houston Cnty., Georgia*, 101 F.4th 793 (11th Cir. 2024).[2] (Doc. 164, 167.) Following supplemental briefing on the now-vacated *Lange* opinion (Docs. 171, 172, 174), on August 1, 2024, this Court entered its Order on Cross-Motions for Summary Judgment. (Doc. 177.) The Court dismissed the Plaintiffs' Equal Protection Clause claims for lack of standing and redressability.

---

[1] The original opinion, *Adams v. Sch. Bd. of St. Johns Cnty.*, 968 F.3d 1286 (11th Cir. 2020), cited in Plaintiffs' motion, was superseded and replaced by *Adams v. Sch. Bd. Of St. Johns Cnty.*, 3 F.4th 1299 (11th Cir. 2021), on July 14, 2021. The Eleventh Circuit subsequently vacated the second opinion and granted *en banc* review.

[2] *Reh'g en banc granted, opinion vacated*, 110 F.4th 1254 (11th Cir. 2024), and *on reh'g en banc,* 152 F.4th 1245 (11th Cir. 2025).

(Doc. 177 p. 2-3.) In light of this dismissal, Plaintiffs' partial motion for summary judgment against the Secretary was denied for lack of standing and the Secretary's motion for summary judgment was denied as moot. (Doc. 177 p. 16.)[3]

With respect to the Title VII claim against DMS, the Court granted Plaintiffs' motion for partial summary judgment, finding liability against DMS under Title VII. (Doc. 177 p. 16.) Specifically, the Court found that the State Health Plan exclusion for gender reassignment or modification services was facially discriminatory under Title VII. (Doc. 177 p. 15.) The Court relied on the original *Lange* opinion, which it was bound to follow (Doc. 177 p. 14), including the original *Lange* panel's interpretation of *Bostock v. Clayton Cnty, Ga.*, 590 U.S. 644 (2020), which has now been rejected by both the Eleventh Circuit and United States Supreme Court. *See Lange*, 152 F.4th at 1254; *United States v. Skrmetti*, 145 S. Ct. 1816, 1835 (2025).

---

[3] The Court also correctly dismissed Plaintiffs' Equal Protection claims against Defendant Allende based on lack of standing. (Doc. 177 p. 2-3, 16.) Defendant Allende would also be entitled to final summary judgment in light of the Supreme Court's decision in *United States v. Skrmetti*, 145 S. Ct. 1816 (2025) and the Eleventh Circuit's decision in *Eknes-Tucker v. Governor of Alabama*, 80 F.4th 1205 (11th Cir. 2023) *rehearing denied*, *Eknes-Tucker v. Governor of Alabama*, 114 F.4th 1241 (11th Cir. 2024) (holding that "regulation of a course of treatment that only gender nonconforming individuals can undergo would not trigger heightened scrutiny *unless* the regulation were a pretext for invidious discrimination against such individuals" and did not establish an unequal regime for males and females. *Id.* at 1228-29 (citing *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 235 (2022) and adopting the rationale of *Geduldig* and its progeny).

Shortly after the Court's ruling, on August 15, 2024, the Eleventh Circuit granted a petition to rehear *Lange en banc* and simultaneously vacated the original *Lange* panel opinion relied on by this Court in granting Plaintiffs' motion for summary judgment. *Lange v. Houston Cnty., Georgia*, 110 F.4th 1254 (11th Cir. 2024).

On October 23, 2024, this Court stayed the present action pending resolution of the *en banc* rehearing in *Lange*. (Doc. 187.) In reaching its decision to stay, the Court noted that "[t]he panel opinion this Court relied upon in ruling on the parties' cross-motions for summary judgment is nearly on all fours with the facts of this case. As DMS persuasively argues, ***the eventual en banc holding in Lange will be controlling in this case***." (Doc. 187 p. 2.) (emphasis added.)

On September 9, 2025, the Eleventh Circuit issued a new opinion in *Lange* which is now controlling. *See Lange v. Houston Cnty., Georgia*, 152 F.4th 1245 (11th Cir. 2025). Subsequently, this Court directed the parties to confer and file a joint status report and briefing schedule (Doc. 189), which the parties did on October 1, 2025. (Doc. 190). Pursuant to the agreed briefing schedule, Defendants now ask this Court to reconsider its previous order granting Plaintiffs' motion for summary judgment against DMS on the Title VII claim, and grant final summary judgment Defendants' favor.

**III.    This Court should grant final summary judgment in favor of DMS based on the binding precedent of *Lange v. Houston County*.**

As this Court has already acknowledged, *Lange* is "nearly on all fours with the facts of this case" (Doc. 187 p. 2), and this Court is bound to follow the holding and rationale of *Lange*. (Doc. 177 p. 14.) As such, this Court should conclude that the State Health Plan is not facially discriminatory.

**A.    The *en banc* holding in *Lange* is controlling and compels a finding that the State Health Plan is not facially discriminatory.**

In *Lange*, the Eleventh Circuit held that a very similar health plan exclusion for sex change surgery "does not facially violate Title VII." 152 F.4th 1255. The Court rejected all of the same arguments Plaintiffs raise here: that the plan's exclusion for sex change surgeries facially discriminates (1) because of sex, *id.* at 1251–52, (2) transgender status, *id.* at 1252–53, or (3) sex stereotypes, *id.* at 1254.

***No sex discrimination.*** The Eleventh Circuit held that "[u]nder *Bostock*, we apply a 'simple test' for sex discrimination—'change one thing at a time and see if the outcome changes. . . . [I]f changing the employee's sex would have yielded a different choice by the employer,' then the employer has discriminated based on sex." *Id.* at 1251. The Court found that the health plan exclusion for sex change surgery was not facially discriminatory because "[t]he County's policy does not pay for a sex change operation for anyone regardless of their biological sex." *Id.* at 1252. Because the sex change exclusion did not "prohibit conduct for one sex that it permits for the

other," nor did coverage "turn[] on whether the County's employee is a man or a woman," there was no sex-based discrimination. *Id*. at 1251-52. Sex was "simply not a but-for cause." *Id.* (*citing Skrmetti,* 145 S. Ct. at 1835).

Here, just as in *Lange*, coverage under the State Health Plan doesn't change depending on whether the employee seeking coverage for gender reassignment services is a male or female. Under the State Health Plan, no one, male or female, gets coverage for gender reassignment. Because "[n]othing about the policy exclusion turns on whether the [Florida] employee is a man or woman," *id.* at 1252, the exclusion doesn't discriminate because of sex under controlling precedent.

***No transgender status discrimination.*** The Eleventh Circuit further held that transgender status is not a protected characteristic under Title VII. As the Court put it: "Neither the Supreme Court nor this Court has held that transgender status is separately protected under Title VII apart from sex. And *Bostock* did not add transgender status, as a category, to the list of classes protected by Title VII." *Id.* Rather discrimination based on transgender status may be a form of sex discrimination when an employer fires an employee simply for being transgender, as was the case in *Bostock*, because in that narrow situation changing the employee's sex would necessarily change the employer's decision in a but-for sense. *Id*. Whether a plan exclusion may impact transgender individuals is therefore irrelevant to the Title VII analysis. *Id*.

The Court went on to hold, however, that "even if this theory were viable under Title VII, the County's plan does not facially discriminate based on transgender status." *Id.* at 1252. Rather, the exclusion amounted to a "classification based on medical use." *Id.* at 1253. Transgender employees were not required to "pay more than nontransgender employees or that transgender employees or their dependents receive reduced benefits." *Id.*

The same is true here. The State Health Plan simply excludes a particular kind of treatment for a particular medical use (gender reassignment), just as the county's exclusion in *Lange*. Therefore, the State Health Plan does not facially discriminate based on transgender status. The same is also true if one considers the treatments sought by the Plaintiffs here. For example, Ms. Claire seeks coverage for a bilateral orchiectomy. The State Health Plan would "cover [orchiectomy] … for other purposes, such as treatment for cancer …, whether or not the employee who needed those procedures was transgender." *Id.* at 1245. Therefore, the State Health Plan doesn't discriminate because of transgender status, but based on diagnosis and medical purpose.

***Not sex stereotyping.*** The Court also determined that the health plan exclusion did "not facially discriminate[] based on sex stereotypes." *Id.* at 1254. The Court reasoned that because the plan excluded coverage for a suite of medical procedures that change the appearance of a person's sex organs – "regardless whether the goal is

to differ from, or align with, natal sex" – it did not discriminate based on sex stereotypes. *Id*. Here, the plain language of the State Health Plan exclusion would prohibit gender reassignment services, regardless of whether they were requested for transitioning or detransitioning, and there is no evidence that detransitioning surgeries have ever been covered under the State Health Plan.

***

Based on the Eleventh Circuit's ruling in *Lange*, this Court must hold that the State Health Plan is not facially discriminatory on the basis of sex, transgender status, or sex stereotyping. Just like the exclusion in *Lange* for sex change surgery, the Plan exclusion for gender reassignment services similarly classifies based on medical treatment and diagnosis – not sex, transgender status, or stereotypes about sex. Therefore, this Court should find that the State Health Plan does not facially violate Title VII.

**B.    The Supreme Court's holding in *Skrmetti* also compels this Court to find that the Plan exclusion is not facially discriminatory.**

The Supreme Court's opinion in *United States v. Skrmetti,* heavily cited in the new *Lange* opinion*,* also compels reconsideration of the Court's order. *Skrmetti,*145 S. Ct. 1816 (2025).   In *Skrmetti*, interested parties challenged a Tennessee law prohibiting sex transition treatments for minors under the Equal Protection Clause. *Id*. at 1827. The Court held that the law in question did not classify based on sex because, taken in the context of medical treatment, the classification turned on

specific medical diagnoses, not sex. *Id*. at 1831. While a transgender boy could not receive hormones to treat gender dysphoria, he could receive such treatment for a congenital defect or other allowed medical reason. Thus, "application of that prohibition does not turn on sex." *Id*.

The *Skrmetti* Court went further to explain its rationale in *Bostock. Id*. at 1834. The Court noted that an employer who fires a transgender person simply for being transgender violates Title VII's prohibition on discharging individuals "because of" sex. *Id*. This is so because biological sex was the but-for cause of the decision. *Id*. at 1834-35. This is not so with a law or policy prohibiting medical sex transition treatment, where changing the plaintiffs' biological sex in the analysis does not change application of the policy. *Id*. at 1835.

Applying *Skrmetti,* it is clear that the State Health Plan does not discriminate based on sex. Changing the Plaintiffs' biological sex in the analysis would not change the outcome – the requested treatments would not be covered regardless of their natal sex. The exclusion classifies based on medical treatment and excludes certain treatments for certain medical conditions. This is not sex discrimination under Title VII.

> ### C. *Lange* is consistent with the plain language of Title VII, which has not been amended to include transgender-related medical conditions within the definition of "because of sex."

As has been discussed by Plaintiffs in their effort to distinguish *Geduldig v. Aiello,* 417 U.S. 484 (1974) (Equal Protection Clause analysis) and *Gen. Elec. Co. v. Gilbert*, 429 U.S. 125 (1976) (Title VII analysis) (Doc. 136 p. 5-8), after the Supreme Court's holding in *Gilbert*, Congress amended the definition of "because of sex" under Title VII to include an express list of pregnancy-related medical conditions. 42 U.S.C § 2000e(k). However, the amendment to Title VII does not include gender dysphoria among the list of medical conditions subsumed within the meaning of "because of sex." Thus, prior to the amendment, "because of sex" did not include sex-related medical conditions. *See Geduldig*, 417 U.S. at 497 n.20; *Gilbert*, 429 U.S. at 140. See also, *AT & T Corp. v. Hulteen*, 556 U.S. 701, 712 n.5 (2009). After the amendment, "because of sex" only includes those medical conditions expressly listed in the statute. *See* 42 U.S.C § 2000e(k).

*Lange* is consistent with the plain language and meaning of Title VII. Classifications based on a medical condition relating to transgender status are not inherently or facially "because of sex." *See Lange*, 152 F.4th at 1252-1253. Therefore, based on the controlling precedent of *Lange* and *Skrmetti*, this Court should find that the State Health Plan exclusion for gender reassignment services is not facially discriminatory.

**IV.    There is no evidence of intentional discrimination based on sex.**

Given that the State Health Plan is not facially discriminatory, Plaintiffs can only proceed to trial if they can show evidence creating a triable issue of fact as to whether DMS intentionally discriminated against Plaintiffs based on their biological sex. *See Lange*, 152 F.4th at 1255. No such evidence exists. Therefore, DMS is entitled to summary judgment in its favor on Plaintiffs' Title VII claims.

Disparate treatment occurs "where an employer has treated a particular person less favorably than others because of a protected trait." *Ricci v. DeStefano,* 557 U.S. 557, 577 (2009). "A disparate-treatment plaintiff must establish that the defendant had a discriminatory intent or motive for taking a job-related action." *Id*. (internal quotation marks omitted). A discriminatory motive may be established by the employer's informal decision-making or "a formal, facially discriminatory policy," but "liability depends on whether the protected trait ... actually motivated the employer's decision." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993). "It is insufficient for a plaintiff alleging discrimination under the disparate treatment theory to show the employer was merely aware of the adverse consequences the policy would have on a protected group." *Am. Fed'n of State, Cty., & Mun. Emps. v. Washington*, 770 F.2d 1401, 1405 (9th Cir. 1985); *see also Wood*, 678 F.3d at 1081.

A plaintiff can establish a prima facie Title VII disparate treatment claim through direct evidence of sex discrimination, or through circumstantial evidence. However, Plaintiffs have not presented either direct or circumstantial evidence to

prove their case. Instead, they have relied solely on their theory that the exclusion is facially discriminatory (Doc. 123 p. 3, 43-33), which it is not. Since Plaintiffs cannot establish a prima facie case of discriminatory intent, summary judgment on the Title VII claim should be entered in favor of DMS.

To prove a circumstantial evidence claim of gender discrimination, a plaintiff must utilize the *McDonnell-Douglas* burden shifting framework. First, the plaintiff must make a prima facie showing that (1) she is a member of a protected class; (2) she suffered an actionable adverse employment action; (3) she was qualified for the job or benefit at issue; and (4) the employer treated similarly situated employees outside the protected class more favorably. *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 842–43 (11th Cir. 2000); *Lewis v. City of Union City*, 918 F.3d 1213, 1222 (11th Cir. 2019).

Once a plaintiff articulates a prima facie case, the defendant must articulate a legitimate business reason for its action. *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000). Under *McDonnell-Douglas*, Defendants are only required to articulate a non-discriminatory reason for the exclusion. *Lovett v. Georgia-Pac. Consumer Products, LP*, 418 F. Supp. 3d 1311, 1323 (S.D. Ga. 2019) (noting that the defendant's burden is "exceedingly light," is not a burden of persuasion, and involves no credibility determination.)

After the employer articulates a legitimate nondiscriminatory reason for its action, the plaintiff must offer evidence that the employer's articulated reasons are a lie and the real reason is unlawful sex discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 514-15 (1993); *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). In rare cases, if a plaintiff cannot establish a valid comparator, she may create a triable issue of fact by showing "a convincing mosaic of circumstantial evidence." *Clemons v. Delta Air Lines Inc*., 625 Fed. Appx. 941, 944 (11th Cir. 2015); *Turner v. Fla. Prepaid Coll. Bd.*, 522 Fed. Appx. 829, 832 (11th Cir. 2013).

In deciding whether a genuine issue of fact regarding pretext exists, courts evaluate whether the plaintiff has demonstrated significant implausibilities or contradictions in the employer's proffered legitimate reasons. *Silvera v. Orange County School Bd.,* 244 F.3d 1253, 1258 (11th Cir. 2001). The plaintiff must present "concrete evidence" in the form of "specific facts" to show that the reason offered is a pretext for discrimination. *Earley v. Champion Intern. Corp*., 907 F.2d 1077, 1081 (11th Cir. 1990). A "reason is not pretext for discrimination unless it is shown both that the reason was false, and that discrimination [based on sex] was the real reason." *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007); *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515 (1993). A plaintiff cannot avoid summary judgment by quarreling with the wisdom of the defendant's action. *Chapman*, 229 F.3d at 1030.

The crux of the disparate treatment inquiry, and the question the *McDonnell-Douglas* framework seeks to answer, is whether DMS intentionally discriminated against Plaintiffs based on sex. *Equal Employment Opportunity Comm'n v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1026 (11th Cir. 2016) (holding that under a disparate treatment theory, the issue is whether the policy at issue was motivated by intent to discriminate against specific persons, not whether it had a disparate impact on a protected group as a whole.) Plaintiffs have not established that their requests for reassignment surgery were denied because of intentional sex discrimination; therefore, they have failed to establish a viable Title VII claim.

### A.    Plaintiffs have not identified any similarly situated comparators.

Plaintiffs cannot establish a prima facie case of intentional discrimination because they have not identified similarly situated members of the State Health Plan outside their protected class [sex] who were treated more favorably. *See Lewis v. City of Union City*, 918 F.3d 1213, 1222 (11th Cir. 2019). Here, it is undisputed that the Plan contains a host of exclusions that apply to all Plan members, regardless of sex, and that not all medical treatment deemed "medically necessary" by a physician is covered.[4] (Doc. 125 p. 4-5.)

---

[4] As of January 1, 2018, the Plan excluded coverage for elective abortions, custodial care such as home health or skilled nursing facilities, cosmetic surgery, dental care, eye care, hearing aids, fertility testing and treatment, penile and testicular prosthesis, recreational therapy, speech therapy, sleep therapy, weight reduction services,

Plaintiffs generally allege that transgender Plan members are treated less favorably because treatment for a condition that primarily impacts transgender persons [gender dysphoria] is not covered under the Plan. For example, Plaintiffs argue that cisgender women are treated more favorably than transgender women because cisgender women are entitled to coverage for mastectomy following cancer, while mastectomy to treat gender dysphoria is not covered. (Doc. 123 p. 35.) However, this is no different than pointing out that under the Plan, women are not entitled to coverage for fertility treatment or that the Plan exclusion for speech therapy only impacts persons who suffer from speech disorders. Neither observation establishes discriminatory treatment of sex-based comparators.

The proper analysis under Title VII is whether members of one biological sex are treated differently than members of another. The analysis is not whether cisgender females and transgender males (both biologically female) are treated differently. *Lange*, 152 F. 4th at. 1251-52; *Skrmetti*, 145 S. Ct. at 1835; *Bostock,* 590 U.S. at 656.

---

tobacco cessation, and cardiac rehabilitation, among other exclusions. (Doc.121-4 p. 59-63; Doc.121-5 p. 52-55; Doc.121-6 p. 33-37; Doc.118-3.Frost 69:4-8.) Medical procedures (including penile implants) are not covered for the treatment of psychosexual erectile dysfunction or other sexual disorders. (Doc.121-4 p. 56, 62; Doc. 121-5 p. 50, 54; Doc.121-6 p. 35, 36; Doc. 118-10.Thomas-Brown 98:24-99:14; Doc.118-14.Jackson 65:12-21, 68:3-12; Doc.121-9 p.1.) Other psychiatric disorders excluded by the sexual disorders and dysfunctions exclusions include but are not limited to hypoactive sexual desire disorder, sexual aversion disorder, and premature ejaculation.(Doc.121-9 p.1; Doc.121-19.)

Here, the Plan does not consider sex when making coverage determinations. (Doc.118-14.Jackson 55:12-56:12; Doc.118-13.Fillyaw 53:9-20, 59:22-60:22, 219:3-18.) Coverage is based on medical conditions. If some women have coverage for mastectomy under the Plan to treat certain medical conditions, but other women with different medical conditions do not, the determinative factor is the specific medical condition, not the biological sex of the Plan member. Not only would these women be members of the same sex-based protected class, and thus not proper comparators under the Title VII analysis, but they would not be similarly situated because they suffer from different medical conditions. *See Lewis,* F.3d at 1222.

Plaintiffs have not shown that under the State Health Plan, they were treated differently than other members of their biological sex. (*See e.g.* Doc.118-2.Bonnell 39:19-40:9, establishing that both transgender and non-transgender individuals – regardless of biological sex – are entitled to mastectomy for a covered medical condition, such as cancer.)[5]

---

[5] Furthermore, Plan members suffering from cancer and gender dysphoria are not similarly situated "in all material respects," as required for a Title VII comparator analysis. *See Lewis*, 918 F.3d at 1227. Gender dysphoria is a psychological, mental health condition identified in the Diagnostic and Statistical Manual for Mental Disorders and is vastly different from a medical diagnosis like cancer. A more appropriate analysis would be to compare Plaintiffs to cisgender individuals who seek or receive surgical interventions to treat a psychiatric condition. Very few psychological diagnoses are treated by surgical interventions (Doc.87.Levine Report p. 10), but one other such example of a condition that would not be covered by the Plan – psychosexual erectile dysfunction – is accompanied by a similar exclusion.

A health plan exclusion of a medical condition is not sex-based. *Gen. Elec. Co. v. Gilbert*, 429 U.S. 125, 135 (1976). Excluding reassignment surgery is not the same as excluding hospitalizations for spouses of male employees but not spouses of female employees, *Newport News Shipbuilding & Dry Dock Co. v. E.E.O.C.*, 462 U.S. 669, 683 (1983), or requiring women to pay more than men for retirement benefits. *UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 197 (1991). Because the Plan exclusion addresses treatment for a particular psychological condition and does not treat men or women differently, it is not discriminatory. *See Standridge v. Union Pac. R.R. Co.,* 479 F.3d 936, 943-45 (8th Cir. 2007); *Jespersen v. Harrah's Operating Co., Inc.*, 444 F.3d 1104, 1109 (9th Cir. 2006).[6]

---

(Doc.118-10.Thomas-Brown 98:24-99:14; Doc.121-4 p. 56.) Similarly, the State Health Plans exclude treatments for psychiatric sexual disorders, such as premature ejaculation or psychosomatic Dyspareunia (painful intercourse). (Doc.118-14.Jackson 65:12-21, 68:3-12; Doc.121-9 p. 1.) And there is no evidence that the Plan covers any surgical procedure to treat a purely psychological disorder. (Doc.118-3.Frost 73:6-9.)

[6] Other courts have similarly held that decisions based on characteristics *associated* with protected traits are not equivalent to making decisions *because of* protected traits. *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993)(age and years of service are analytically distinct); *EEOC v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1035 (11th Cir. 2016)(grooming policy that prohibited dreadlocks was not discriminatory based on race); *Garcia v. Gloor*, 618 F.2d 264, 272 (5th Cir. 1980) (prohibiting bilingual employee from speaking his native language at work was not national origin discrimination.)

Plaintiffs' assertion that members of their own natal sex [i.e. members of their same protected class] receive coverage that Plaintiffs do not receive based on different diagnoses refutes the claim of sex discrimination. *See Hammons v. George C. Wallace State Community College*, 174 Fed. App'x 459, 463 (11th Cir. 2006) (plaintiff failed to establish a prima facie case because she was replaced by someone within her same protected class); *Herron-Williams v. Alabama State Univ.*, 287 F. Supp. 3d 1299, 1314 (M.D. Ala. 2018), *aff'd*, 805 Fed. Appx. 622 (11th Cir. 2020) (an alleged comparator who is a member of the same protected class as plaintiff is "by definition" not a comparator); *McCloud v. Potter*, 506 F.Supp.2d 1031, 1047 (S.D.Ala.2007). This demonstrates that the classification at issue is based on a medical procedure, not biological sex. *See Eknes-Tucker v. Governor of Alabama*, 80 F.4th 1205 (11th Cir. 2023), *petition for rehearing denied Eknes-Tucker v. Governor of Alabama*, 114 F.4th 1241 (11th Cir. 2024) (holding that medical conditions uniquely impacting transgender persons are not facially discriminatory based on sex under the Equal Protection Clause.) *See also*, *Geduldig*, 417 U.S. at 496 n.20; *Gilbert*, 429 U.S. 125; *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022); *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 270 (1993).

Applying the Title VII analysis of a similar health plan exclusion set forth in *Lange,* it is clear that transgender individuals are not discriminated against under the State Health Plan at issue here. Plan denials for the services Plaintiffs seek are not

divided by biological sex or along transgender versus cisgender lines. "There is no risk from which [cisgender Plan members] are protected and [transgender Plan members] are not." *Gen. Elec. Co. v. Gilbert*, 429 U.S. 125, 135 (1976). That gender dysphoria may be associated with transgender status, does not change the fact that transgender members are equally entitled to receive mastectomy, orchiectomy, and reconstructive surgery to treat covered medical conditions as cisgender members. Whether comparing biological sex or transgender status, the Plan does not treat any member differently because of sex.

Title VII prohibits disparate treatment. *Lewis v. City of Union City*, 918 F.3d 1213, 1223 (11th Cir. 2019) ("By its very nature, discrimination is a comparative concept—it requires an assessment of whether 'like' (or instead different) people or things are being treated 'differently.'") A Plaintiff must show that he or she was treated worse than others similarly situated. Plaintiffs' inability to identify Plan members treated more favorably because of biological sex is fatal to their claim. *Smith v. Lockheed-Martin Corp.,* 644 F.3d 1321, 1328 (11th Cir. 2011)(Failure to produce a comparator is excusable *only if* plaintiff can present a convincing mosaic of "circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent.") Without showing that Plaintiffs were treated differently than persons outside their sex, they cannot prevail.

**B. Plaintiffs have no evidence of pretext to rebut DMS' legitimate reasons for the exclusion.**

Furthermore, Plaintiffs have no evidence of pretext. DMS has articulated a legitimate reason for the existence of the sexual reassignment and modification exclusion – it was put in place over 40 years ago when gender reassignment surgeries were experimental in nature and not widely covered in the insurance industry. (Doc.118-9.Stokes 19:21-20:9.) There is no evidence that DMS has treated its exclusion for gender reassignment services differently than other treatments historically considered experimental by the Plan, and there are other items among the Plan's many express exclusions which may exclude care deemed medically necessary by a physician. (Doc.121-7; Doc.121-8 p.14-17.) Title VII does not regulate insurance policies. *Lange*, 152 F.4th at 1250. It simply prohibits intentional discrimination because of sex in the provision of employer-provided health insurance. *Id*.

It is also undisputed that benefits cannot be added to the Plan without "prior approval of the Legislature." Fla. Stat. § 110.123(5). The addition of benefits is reserved to the Florida Legislature because it inevitably involves the addition of costs. (Doc. 118-9.Stokes 11:4-18, 88:3-10.) DMS is charged with administering the Plan in a cost-effective manner. Fla. Stat § 110.123(3)(b). As such, DMS does not make

recommendations to add expenses to the State Health Plan, and any recommendations made by DMS have been to decrease Plan expenses. (Doc.118-9.Stokes 12:4-16.)[7]

While the Plan was analyzed for compliance with federal regulations in 2016, there is no evidence that the Plan has ever violated federal law or regulation, and DMS is without authority to add gender reassignment to the Plan without being directed to do so by the Florida Legislature. (Doc.125 p.10; Doc.135 p.7-8.) Nothing about DMS' actions or inactions in 2016 evidences intent to discriminate against Plaintiffs because of their biological sex.

In light of Defendant's legitimate reasons for the Plan exclusion, (*see also,* Doc.125 p.9-11; Doc.126 p.14-15; Doc.135 p.3,5,7-8; Doc.118-10.Thomas-Brown 27:19-28:8; Doc.122-27), Plaintiffs have not proffered any evidence of pretext or established that the exclusion was the result of <u>intentional</u> sex discrimination. Plaintiffs' efforts to recast the history of the Plan exclusion into something discriminatory fail. There is no evidence that DMS created or implemented the exclusion for the purpose of discriminating based on sex; that DMS created or implemented the exclusion for the purpose of harming transgender individuals because of their sex; or that DMS had any animus toward these specific Plaintiffs because of their sex.

---

[7] For purposes of this litigation, DMS used Blue Cross data to estimate that coverage of gender reassignment services would cost more than $1 million annually. (See Doc. 174 p. 3.)

"A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons ….[and] cannot succeed by simply quarreling with the wisdom of that reason." *See Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000). *See also*, *Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466, 1470 (11th Cir.1991). Here, the evidence clearly sets forth the reasons for the exclusion at issue and Plaintiffs have not proffered any evidence establishing that these reasons are a lie or that the real reason is intentional discrimination based on sex. As such, Plaintiffs' Title VII claims fail as a matter of law.

## CONCLUSION

Based on the foregoing reasons, Defendants ask this Court to grant their motions for summary judgment (Docs 125 and 126) and enter final summary judgment in their favor on all claims.

Respectfully submitted this 3rd day of November 2025.

HENRY BUCHANAN, P.A.

 */s/ Miriam R. Coles*
MIRIAM R. COLES
Florida Bar No. 58402
mcoles@henryblaw.com
J. STEVEN CARTER
Florida Bar No. 896152
Post Office Drawer 14079
Tallahassee, Florida 32317-4079
(850) 222-2920: Telephone
(850) 224-0034: Facsimile
*Counsel for Defendants*

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rules 5.1 and 7.1, undersigned counsel certifies that this motion consists of 5598 words and is typed in Times New Roman, font size 14.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed via the CM/ECF system which will send electronic notification to all counsel of record on this 3rd day of November 2025.

*/s/ Miriam R. Coles*
ATTORNEY