UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**JAMI CLAIRE, KATHRYN LANE,
and AHMIR MURPHY**

**Plaintiffs,**

v.                                              CASE NO. 4:20-cv-0020-MW-CAS

**FLORIDA DEPARTMENT OF
MANAGEMENT SERVICES and
PEDRO ALLENDE, in his official
Capacity as Secretary of the Florida
Department of Management Services.**

**Defendants.**
_____ /

### DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO MOTION FOR RECONSIDERATION OF ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Defendants, FLORIDA DEPARTMENT OF MANAGEMENT SERVICES, and PEDRO ALLENDE in his official capacity as Secretary of the Florida Department of Management Services (collectively, "Defendants"), by and through undersigned counsel, hereby Reply to Plaintiffs' Response to Defendants' Motion for Reconsideration of Order on Cross-Motions for Summary Judgment as follows:

**I.**   ***Lange* compels summary judgment on Plaintiffs' Title VII claims related to the gender reassignment exclusion.**

Contrary to Plaintiffs' arguments, the *Lange* decision is dispositive on Plaintiffs' Title VII claims. Plaintiffs admitted this in a prior filing with the court:

1

"[t]he *Lange* decision addresses a substantially identical Title VII claim by a transgender public employee in Georgia." (Doc.173 p. 6.) Even in their most recent arguments, Plaintiffs do not allege that the State Health Plan (Plan) treats Plan members differently based on sex. Rather, they contend that the Plan stereotypes on the basis of sex (Doc.196 p. 6) and discriminates based on transgender status. (Doc.196 p. 9.) Plaintiffs also argue that they have proffered evidence of discriminatory intent sufficient to defeat summary judgment. All of these arguments fail for the reasons discussed below.

    **A.**    **Just like the exclusion at issue in *Lange*, the Plan exclusion does not discriminate based on sex stereotypes.**

Discrimination on the basis of sex stereotyping occurs when a decision-maker accepts behavior from one sex that it does not accept from the other sex. *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 660-667 (2020). Terminating an employee because they are gay or transgender may constitute a form of sex-stereotyping discrimination because the decision-maker is accepting conduct from persons of one sex that it does not accept from persons of the other sex.[1] *Id*.

---

[1] *Copeland v. Georgia Dep't of Corr.*, 97 F.4th 766, 770 (11th Cir. 2024) is consistent with *Bostock*. In *Copeland*, the employer and coworkers accepted behavior from biological male employees that they did not accept from the plaintiff based on plaintiff's biological sex. *Copeland* does not address a health care plan and is not analogous to the present action.

The Plan exclusion is not based on sex stereotypes because it does not permit coverage for persons of one sex that it denies to persons of another. As fully briefed in Defendants' original motions for summary judgment (Doc.125 p. 3-12), the Plan does not cover any medical service that is not medically necessary (Doc.121-4 p. 6, 11; 121-5 p. 7.) And while the Plan provides coverage for some medically necessary[2] treatments for covered medical conditions (Doc.125 p. 4; Doc.121-4 p. 5-8; Doc.121-5 p. 6-7), it also excludes some medically necessary treatments (Doc.121-4 p. 10; Doc.121-5 p. 11.)

The Plan's exclusion of gender reassignment services (Doc.121-4 p. 60; Doc.121-5 p. 53) applies to medical procedures and treatments if the associated diagnosis is gender dysphoria[3] or a related diagnosis, and the only medical purpose is to treat the gender dysphoria or a related diagnosis. (Doc.118-10 53:15-54:18.) While the exclusion in *Lange* used slightly different terminology, as this Court has already observed, it excludes the same class of treatments as the Plan exclusion. The exclusion in *Lange* excludes: "[d]rugs for sex change surgery" and "[s]ervices and

---

[2] "Medically necessary" is defined as "[t]he use of any appropriate medical treatment, service, equipment and/or …which is necessary for the diagnosis, care and/or treatment of a Health Plan Member's illness or injury…" and complies with other enumerated requirements. (Doc.121-4 p. 11.)

[3] Gender dysphoria is a psychiatric condition characterized by feelings of incongruity between one's sex and experienced gender. (Doc.121-18 p.2; Doc.118-20. 81:20-82:5; Doc. 87 p. 7; Doc.121-18 p. 2.)

3

supplies for a sex change and/or the reversal of a sex change," *Lange v. Houston Cnty., Georgia*, 152 F.4th 1245, 1248 (11th Cir. 2025). Both plans cover psychotherapy and psychiatric testing regardless of the underlying diagnosis. *Lange,* 152 F.4th at 1249; (Doc.118-13.Fillyaw 61:24-62:10, 185:17-22, 243:17-22; Doc.118-9.Stokes 51:24-52:5; Doc.118.14.Jackson 38:3-22, 62:12-63:7, 64:20-25.)

Plaintiffs assert that because the Plan does not explicitly exclude detransition services or surgeries, it is distinguishable from *Lange* and necessarily discriminates on the basis of sex stereotypes. But the Plan excludes "gender reassignment or **modification.**" (Doc.121-4 p. 60; Doc.121-5 p. 53.) Reversing a sex change procedure clearly constitutes gender modification. Moreover, the Plan expressly excludes cosmetic surgical procedures for all but an identified list of reasons, none of which include detransitioning. (Doc.121-4 p. 43.)

Furthermore, Plaintiffs' own argument that detransitioning is not a medically or psychiatrically recognized medical treatment (Doc.196 p. 8) hurts, rather than supports, their argument. The Plan covers only medically necessary treatment of certain recognized medical conditions; thus, it does not cover the elective reversal of medical procedures that are themselves not covered under the Plan. The assertion that elective surgery not connected to any medical diagnosis would somehow be covered under the Plan disregards the plain language of the Plan, ignores the undisputed record evidence as to how coverage determinations are made, and defies common

sense. If detransitioning does not have a related diagnosis as Plaintiffs argue (Doc.196 p. 8), it would not be medically necessary to treat a covered condition and would not meet coverage criteria under the Plan. (Doc.121-4 p. 6, 11; Doc.118-25 p. 59-62:6, 65:5-66:6; Doc.118-14 p. 24:2-13, 26:2-20, 40:5-7; Doc.118-10 p. 58:10-21, 76:16-77:7; Doc.118-2 p. 13:20-14:13; Doc.118-3 p. 23:1-17.)

Here, Plaintiffs baselessly attempt to distinguish *Lange* by claiming, without any supporting evidence, that detransitioning would be covered under the Plan. However, Plaintiffs have not identified any underlying medical diagnosis for which reversal of gender reassignment or modification services and supplies would be medically necessary; cited any language in the Plan documents suggesting that reversal of gender reassignment surgery is covered; or proffered any evidence suggesting that detransitioning procedures have ever been covered under the Plan.

Plaintiffs also improperly confuse the burden of proof. (Doc.196 p. 7.) Defendants are not obligated to affirmatively show that the Plan does not cover detransitioning procedures. Instead, **plaintiffs bear the burden** of establishing that the decision at issue was motivated by sex. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 252 (1989); *Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012); *Evans v. Georgia Reg'l Hosp.*, 850 F.3d 1248, 1260-61 (11th Cir. 2017) (Pryor, J., concurring).

Sex stereotypes played no role in the coverage decision at issue. Defendants do not know how Plaintiffs, or any of the other hundreds of thousands of Plan participants, identify or present,[4] and they do not care. The Plan is concerned only with making coverage decisions based on the Plan documents, not based on stereotypes about how Plaintiffs should act or behave. Because there is no evidence that the Plan discriminated on the basis of sex-stereotyping, summary judgment is warranted.

### B. Like *Lange*, the Plan does not discriminate based on transgender status.

As explained in prior briefings, transgender status is not protected apart from discrimination based on biological sex. (Doc.141 p. 11; Doc.171 p. 10; Doc.191 p. 3, 7-8.) Medical decisions relating to medical diagnoses which affect transgender persons are therefore not sex discrimination unless there is evidence of discriminatory intent based on biological sex. *See Lange*, 152 F.4th at 1253.

Contrary to Plaintiffs' assertion, the Plan exclusion *does* rely on diagnoses – diagnoses for which gender reassignment and modification services may be prescribed as treatment. (Doc.118-2 p. 14:5-13; Doc.118-3 p. 11:6-14; Doc.118-25 p. 65:5-66:6.) The Plan covers only treatment that is medically necessary to treat a covered medical condition. (Doc.121-4 p. 6, 11-12.) Health care plans pay for

---

[4] (Doc.118-14.Jackson 55:12-56:12; Doc.118-13.Fillyaw 53:9-20, 59:22-60:22, 219:3-18.)

treatments and medical services; thus, the Plan coverage and exclusion sections primarily discuss categories of treatment or services. But medical treatments and services are necessarily based on underlying medical conditions.

This is no different than the exclusion in *Lange,* which was also tied to a class of medical treatments. Specifically, the exclusion at issue in *Lange* excluded drugs, services, and supplies for sex changes. *Lange*, 152 F.4th at 1248. As the *Lange* court emphasized, "'a key aspect of any medical treatment' is 'the underlying medical concern the treatment is intended to address.'" *Lange,* 152 F.4th at 1253 (quoting *Skrmetti*, 605 U.S. at 513). Applying the logic of *Skrmetti*, the *Lange* court held that the plan exclusion for sex change drugs, services, and supplies did not facially discriminate based on transgender status because it classified based on medical use. *Id*. at 1253.

Similarly, the Plan exclusion for gender reassignment and modification here relates to the "underlying medical concern for which the treatment is intended to address." *Lange,* 152 F.4th at 1253. The Plan exclusion is no different from the exclusion in *Lange*, which classified based on medical condition and did not discriminate based on transgender status.

Plaintiffs again ignore the record when arguing that the Plan singles out transgender persons regardless of the underlying diagnosis. (Doc.196 p. 13.) Plaintiffs concede that "gender reassignment" is a term of art relating to the treatment

7

of the psychiatric diagnosis gender dysphoria. (Doc.196 p. 8-9.) Thus, on its face, the exclusion necessarily references the diagnosis of gender dysphoria by excluding treatments for that medical condition. Regardless, transgender individuals are entitled to the same covered services as any other Plan member and are not penalized based on their transgender status.

### C. There is no evidence of discriminatory intent.

Contrary to Plaintiffs' allegations, there is no evidence that the Plan exclusion was motivated by discriminatory intent. Plaintiffs seem to argue that because the exclusion exists, it must be intentionally discriminatory based on sex. (Doc.196 p. 16-17.) This argument simply recasts their facial challenge. As fully explained in *Lange* and in Defendants' motion for reconsideration, the exclusion is not facially discriminatory. *Lange*, 152 F.4th at 1255. Plaintiffs' belief that the exclusion is immoral and unjust (Doc.196 p. 17) does not create record evidence of discriminatory intent based on sex.

Because the Plan is not facially discriminatory, Plaintiffs must come forward with direct or circumstantial evidence of intent establishing that gender reassignment and modification services are excluded because of an intent to discriminate against Plaintiffs because of their sex. No such evidence exists.

Plaintiffs downplay the role of the *McDonnell Douglas* burden-shifting framework (Doc.196 p. 21-22) because they cannot establish a prima facie case of

8

disparate treatment or proffer evidence of pretext. But black-letter Title VII law requires that Plaintiffs show that they were treated differently than Plan members outside their protected class. *See Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1223 (11th Cir. 2019) ("By its very nature, discrimination is a comparative concept—it requires an assessment of whether 'like' (or instead different) people or things are being treated 'differently.'").

Certainly, there can be employment discrimination cases where the pool of similarly situated comparators is limited yet the record contains a mosaic of other evidence of disparate treatment and discriminatory intent. *See e.g.*, *Tynes v. Florida Dep't of Juvenile Justice*, 88 F.4th 939, 942 (11th Cir. 2023). Here, however, Plaintiffs' inability to point to either individual comparators or a class of comparators demonstrates that the exclusion does not treat Plan members differently based on sex. Without showing that Plaintiffs are treated differently than persons of a different sex, Plaintiffs cannot prevail on a sex discrimination claim.

In any event, the convincing mosaic theory still requires Plaintiffs to show that sex discrimination motivated the coverage decisions at issue. *See Thomas v. Sheriff of Jefferson Cnty., Alabama*, No. 22-13875, 2023 WL 6534602, at *6 (11th Cir. Oct. 6, 2023).Plaintiffs have not offered *any* evidence of discriminatory intent, much less a convincing mosaic of circumstantial evidence. *See Lewis v. City of Union City, Georgia*, 934 F.3d 1169, 1185 (11th Cir. 2019).

As the undisputed record establishes, the Plan exclusion has been in place for decades; it originated when gender reassignment was an experimental treatment; and Defendants have never been instructed to add it as a covered treatment. Plaintiffs' argument that failing to add coverage for gender reassignment demonstrates discriminatory intent (Doc.196 p. 18), is entirely circular. The exclusion is not facially discriminatory based on sex; therefore, failing to recommend removal of the exclusions does not evince intent to discriminate based on sex. At the end of the day, Plaintiffs rely on their subjective beliefs that the exclusions are facially discriminatory. But beliefs aren't evidence of discrimination, much less evidence that would create a triable issue of fact on a disparate treatment claim.

## II. Lane's claims under Title VII and Equal Protection relating to facial feminization fail as a matter of law.

### A. Lane's Title VII claim fails as a matter of law and is otherwise subject to the same decision defense.

Lane's claim that the exclusion of facial feminization surgeries constitutes discrimination under Title VII fails for the reasons already discussed at length – that the gender reassignment exclusion is not facially discriminatory and there is no evidence of discriminatory intent. Nonetheless, if this Court were to allow a trial on Lane's Title VII claims, DMS should be permitted to raise the same decision defense, which DMS asserted in its motion for summary judgment. (Doc.126 p. 15-16.) Defendants addressed this at length in the supplemental brief on damages, noting that

10

defenses should be allowed to proceed when there is no unfair prejudice or surprise. (Doc.183 p. 15-20.)

> **B. Lane's Equal Protection claim lacks standing, as this Court has already found, and is otherwise foreclosed under *Eknes-Tucker* and *Skrmetti* as well as the facts of this case.**

This Court dismissed Plaintiffs' Equal Protection claims for lack of standing. As to Lane, the undisputed evidence established that the facial feminization requested by Lane were also denied as cosmetic. (Doc.177 p. 2; Doc.125 p. 13-14; Doc.126 p. 15-16.) Not only does Plaintiffs' complaint fail to challenge the cosmetic procedure exception, but the cosmetic exclusion is facially neutral, and there is no evidence of invidious discriminatory intent with respect to the application of the cosmetic exclusion to Lane. Because Lane has no continuing or redressable injury, this Court correctly dismissed her claim for lack of standing.

This Court is bound to follow the holding of *Eknes-Tucker*, 80 F.4th 1205, 1227-28 (11th Cir. 2023), which held that a state statute prohibiting certain medical interventions to treat gender dysphoria in minors classified based on medical use and did not discriminate based on sex. The Supreme Court reached the same conclusion in *Skrmetti,* 605 U.S. at 511.

Even if exclusions of this nature were found to classify based on transgender status, which they do not, transgender status is not a suspect or quasi-suspect class, so the exclusion would be subject only to rational basis review. *See Doe v. Surgeon*

11

*Gen.*, 2024 WL 4132455, at *3 (11th Cir. Aug. 26, 2024). The Plan exclusion easily passes rational basis scrutiny, as explained at length in previous briefings. (Doc.125 p. 29-32; Doc.141 p.14-15.) This is particularly true in the context of cosmetic feminization procedures, which are independently excluded under the Plan because of their cosmetic nature, not just under the gender reassignment exclusion. (Doc.125 p. 26-27.)

Plaintiffs' attempt to distinguish *Skrmetti* and *Eknes-Tucker* by noting that the Plan exclusion does not list particular diagnoses fails. As *Lange* and *Skrmetti* explain, "a key aspect of any medical treatment" is the underlying diagnosis that "the treatment is intended to address." *Lange,* 152 F.4th at 1253 (quoting *Skrmetti*, 605 U.S. at 513). It is undisputed that the coverage decisions at issue were based on the diagnosis of gender dysphoria. (Doc.123 p. 4-5, 7-10; Doc.125 p. 4, 7-8, 13-15.) Thus, the purported failure to list specific treatments or qualifying diagnoses in the exclusion is immaterial.

### III. Plaintiffs' new arguments regarding §§ 286.311 and 456.001 fail because they are not facially discriminatory.

Fla. Stat. §§ 286.311 and 456.001, passed approximately 5 years after the coverage decisions at issue and 3 years after the lawsuit was filed, are not at issue in this litigation. Plaintiffs' assertion that these 2023 statutory changes are facially discriminatory attempts to improperly interject a new theory of liability, not pled in the complaint, and not otherwise before this Court. Discovery in this case closed

12

years before Fla. Stat. §§ 286.311 and 456.001 were enacted, and Defendants would be prejudiced if Plaintiffs were allowed to challenge these statutes at this stage of the litigation. Moreover, neither statute is relevant to the intent analysis of Plaintiffs' Title VII or Equal Protection claims.

Notwithstanding, §§ 286.311 and 456.001 are not facially discriminatory based on sex. *See Doe v. Ladapo*, 2023 WL 8271765, at *1 (N.D. Fla. Sept. 11, 2023); *Doe v. Surgeon Gen.*, 2024 WL 4132455, at *1 (11th Cir. Aug. 26, 2024). Specifically, with respect to Fla. Stat. § 456.001(9)(a), which disallows treatments to minors "… to affirm a person's perception of his or her sex if that perception is inconsistent with the person's" biological sex, both the District Court and Eleventh Circuit noted that in light of *Eknes-Tucker* the statute was likely not facially discriminatory based on sex. *Id*.

Furthermore, legislatures are entitled to a presumption of good faith. *Doe,* 2024 WL 4132455, at *2; *see also Alexander v. S.C. State Conference of the NAACP*, 602 U.S. 1, 10 (2024). Because the record here contains no evidence of the Legislature's intent with respect to these statutes, this Court must conclude that the Legislature acted in good faith when passing §§ 286.311 and 456.001. These statutes do not provide evidence of invidious discriminatory intent sufficient to maintain an Equal Protection claim against Allende.

13

Plaintiffs argue that § 456.001 is directed at a class of persons not a medical diagnosis. However, the statute appears to broadly address gender reassignment based on the definition of gender dysphoria itself. (Doc. 121-18.) Most importantly, there is no evidence that Fla. Stat. § 286.311 as applied to the Plan did impact, or would impact, any coverage decision in this case. Furthermore, the intent of the Florida Legislature in passing these statutes (no evidence of which is in the record) has no bearing on the intent of Defendants or their employees when making the coverage decisions at issue.

Finally, §§ 286.311 and 456.001 have no bearing on the viability of Lane's Equal Protection claim because Lane's facial feminization was independently excluded by the cosmetic exclusion. Plaintiffs have not made any argument that §§ 286.311 and 456.001 impact the applicability or application of the cosmetic procedure exclusion under the Plan or otherwise provide any evidence that the cosmetic exclusion was applied in a manner evidencing invidious discriminatory intent.

## CONCLUSION

Wherefore, Defendants ask this Court to enter final summary judgment in their favor on all claims.

Respectfully submitted this 17th day of December 2025.

        HENRY BUCHANAN, P.A.

        /s/ *Miriam R. Coles*
MIRIAM R. COLES
Florida Bar No. 58402
mcoles@henryblaw.com
J. STEVEN CARTER
Florida Bar No. 896152
scarter@henryblaw.com
Post Office Drawer 14079
Tallahassee, Florida 32317-4079
(850) 222-2920: Telephone
(850) 224-0034: Facsimile
*Counsel for Defendants*

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rules 5.1 and 7.1, undersigned counsel certifies that this motion consists of 3801 limit words and is typed in Times New Roman, font size 14.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed via the CM/ECF system which will send electronic notification to all counsel of record on this 17th day of December 2025.

        /s/ *Miriam R. Coles*
ATTORNEY